KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MARC E. MAYER (SBN 190969)
  mem@msk.com
JAMES D. BERKLEY (SBN 347919)
  jdb@msk.com
CONSTANCE C. KANG (SBN 341622)
  cck@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff Take-Two Interactive
Software, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> PLAYERAUCTIONS, INC., a company organized under the laws of Delaware; IMI EXCHANGE LLC, a company organized under the laws of Delaware; PAIAO NETWORK TECHNOLOGY (SHANGHAI) CO., LTD. (拍奥网络科技（上海）有限公司), a/k/a PLAYERAUCTIONS (SH) CO. LTD., a company organized under the laws of China; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 2:25-cv-01880-ODW (JDE*x*) <br><br> Judge: Hon. Otis D. Wright, II <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF TAKE-TWO INTERACTIVE SOFTWARE, INC. IN OPPOSITION TO MOTION OF DEFENDANTS PLAYERAUCTIONS, INC. AND IMI EXCHANGE LLC TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** <br><br> [Request for Judicial Notice filed concurrently herewith] <br><br> Date: June 2, 2025 <br> Time: 1:30 pm <br> Location: Courtroom 5D <br><br> Filed: March 4, 2025 |

Mitchell
Silberberg &
Knupp LLP

20721274.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................8

II.   GOVERNING LEGAL STANDARD ...............................................10

III.  ARGUMENT ....................................................................................11

    A.    The Complaint Plausibly Alleges Copyright Infringement. ..............11

        1.    Take-Two's Copyright Registrations for GTA V Meet the Registration Requirement. .........................................11

        2.    The Complaint Plausibly Alleges Direct Copyright Infringement..................................................................13

        3.    The Complaint Plausibly Alleges Indirect Copyright Infringement..................................................................16

    B.    The Complaint Plausibly Alleges Trademark Infringement..............21

    C.    PlayerAuctions' Argument That An "Independently Wrongful" Act Is Required For Take-Two's Interference Claim Misconstrues The Law. ...................................................25

IV.   CONCLUSION .................................................................................28

Mitchell
Silberberg &
Knupp LLP

20721274.1

2

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*Am. Airlines, Inc. v. Platinum World Travel*,
  769 F. Supp. 1203 (D. Utah 1990) ................................................................ 28

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ........................................................................ 21

*Applied Bus. Software, Inc. v. Citadel Servicing Corp.*,
  No. SACV1701627CJCJCGX, 2017 WL 10340544
  (C.D. Cal. Nov. 21, 2017) ............................................................................ 16

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
  No. 10cv974 DMS (CAB), 2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ........ 25

*Baxter v. MCA, Inc.*,
  812 F.2d 421 (9th Cir. 1987) ........................................................................ 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 10

*Blackstone Int'l, Ltd. v. E2 Ltd.*,
  2022 WL 16553034 (W.D. Wash. Oct. 31, 2022) ......................................... 15

*Blizzard Ent. Inc. v. Ceiling Fan Software LLC*,
  28 F. Supp. 3d 1006 (C.D. Cal. 2013) ..................................................... 25, 26

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
  716 F. Supp. 3d 835 (C.D. Cal. 2024) ...................................................... 13, 15

*BMW of N. Am., LLC v. Mini Works, LLC*,
  No. CV-07-1936-PHX-SMM, 2010 WL 11484171
  (D. Ariz. Sept. 27, 2010) ......................................................................... 23, 24

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ...................................................................... 21

*Crowley v. Jones*,
  608 F. Supp. 3d 78 (S.D.N.Y. 2022) ............................................................. 20

*Dale v. Wells Fargo Bank, N.A.*,
  No. 22-56031, 2023 WL 8889554 (9th Cir. Dec. 26, 2023) ........................... 10

3

1

## TABLE OF AUTHORITIES
### (continued)

2

3

**Page(s)**

*Digital Theater Sys., Inc. v. Mintek Digital, Inc.*,
No. 02-902 CJC (ANX), 2004 WL 1746251 (C.D. Cal. May 25, 2004)...........23

*Famous Birthdays, LLC v. SocialEdge, Inc.*,
No. CV 21-9562 PA, 2022 WL 1591723 (C.D. Cal. Apr. 15, 2022).................14

*Fourth Est. Pub. Benefit Corp. v. WallStreet.com, LLC*,
586 U.S. 296 (2019) .................................................................................13

*Hahaas Comedy, LLC. v. Girgis*,
No. CV-17-6199-MWF, 2017 WL 10399452 (C.D. Cal. Nov. 29, 2017).........15

*Hensley Mfg. v. ProPride, Inc.*,
579 F.3d 603 (6th Cir. 2009) ...................................................................25

*Home Box Off., Inc. v. Showtime/The Movie Channel Inc.*,
832 F.2d 1311 (2d Cir. 1987) ...................................................................24

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020)...............................................................................27

*John Wiley & Sons, Inc. v. DRK Photo*,
998 F. Supp. 2d 262 (S.D.N.Y. 2014) ......................................................17

*Klauber Bros., Inc. v. Russell–Newman, Inc.*,
No. 11 Civ. 4985(PGG), 2013 WL 1245456 (S.D.N.Y. Mar. 26, 2013)...........12

*Lasica v. Am. Online, Inc.*,
No. CV 15-4230-GW(FFMx), 2015 WL 12791494
(C.D. Cal. Oct. 8, 2015)............................................................................20

*LGS Architects, Inc. v. Concordia Homes of Nevada*,
434 F.3d 1150 (9th Cir. 2006) ..................................................................20

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......................................................10, 11, 28

*Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*,
756 F. Supp. 280 (W.D. La. 1991) ............................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

20721274.1

4

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Md. Jockey Club v. ODS Techs., L.P.*,
No. CIV. WMN-03-2124, 2005 WL 1200181 (D. Md. May 20, 2005) ............27

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) ..................................................................20, 26

*MHR Cap. Partners LP v. Presstek, Inc.*,
12 N.Y.3d 640 (2009) ..................................................................................20

*New Kids on the Block v. News America Publishing, Inc.*,
971 F.2d 302 (9th Cir. 1992) ..................................................................21, 22

*Performance Designed Prods. LLC v. Plantronics, Inc.*,
No. 3:19-CV-00536-GPC-LL, 2019 WL 3082160
(S.D. Cal. July 15, 2019) ..............................................................................22

*Quelimane Co. v. Stewart Title Guar. Co.*,
19 Cal. 4th 26 (1998) ...................................................................................26

*Ravel v. Hubbard*,
112 Cal. App. 2d 255 (1952) ........................................................................27

*Rosen v. Imagevenue.com*,
No. CV1301742SJOMANX, 2013 WL 12132052,
(C.D. Cal. Nov. 26, 2013) .............................................................................14

*S.O.S., Inc. v. Payday, Inc.*,
886 F.2d 1081 (9th Cir. 1989) ................................................................17, 20

*San Mateo Cmty. Coll. Dist. v. Half Moon Bay Ltd. P'ship*,
65 Cal. App. 4th 401 (1998), *as modified* (July 1, 1998)................................17

*Sohm v. Scholastic Inc.*,
959 F.3d 39 (2d Cir. 2020) ...........................................................................20

*Summit Ent., LLC v. B.B. Dakota, Inc.*,
No. CV1004328GAFRZX, 2011 WL 13216987
(C.D. Cal. Nov. 21, 2011) .......................................................................23, 24

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Take-Two Interactive Software, Inc. v. Zipperer*,
   No. 18 CIV. 2608 (LLS), 2018 WL 4347796
   (S.D.N.Y. Aug. 16, 2018) ................................................................. 11, 12, 17, 20

*Thumbtack, Inc. v. Liaison, Inc.*,
   No. 23-cv-02830-WHO, 2024 WL 235172 (N.D. Cal. Jan. 22, 2024) ............. 14

*Toho Co., Ltd. v. William Morrow and Co., Inc.*,
   33 F. Supp. 2d 1206 (C.D. Cal. 1998) ........................................................ 22, 23

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ........................................................................ 22

*TrafficSchool.com, Inc. v. Edriver Inc.*,
   653 F.3d 820 (9th Cir. 2011) .......................................................................... 24

*UMG Recordings, Inc. v. Shelter Capital Partners, LLC*,
   718 F.3d 1006 (9th Cir. 2013) ........................................................................ 10

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) .......................................................................... 16

*Warner Chappell Music, Inc. v. Nealy*,
   601 U.S. 366 (2024) ....................................................................................... 20

*Yaros v. Kimberly Clark Corp.*,
   No. 17CV1159-GPC(BGS), 2018 WL 1744675 (S.D. Cal. Apr. 11, 2018) ...... 21

*Yuga Labs, Inc. v. Ripps*,
   No. CV 22-4355-JFW(JEMX), 2023 WL 7089922
   (C.D. Cal. Oct. 25, 2023) ................................................................................ 24

### STATUTES

17 U.S.C.
   § 101 .............................................................................................................. 12
   § 101 *et seq.* ................................................................................................... 13
   § 106 ......................................................................................................... 12, 13
   § 501(a) .......................................................................................................... 13

# TABLE OF AUTHORITIES
<u>(continued)</u>

**Page(s)**

## RULES

Federal Rules of Civil Procedure
    Rule 8 ..................................................................................................... 14, 15
    Rule 8(a)(2) ................................................................................................. 10
    Rule 12(b)(6) .............................................................................................. 10

## OTHER AUTHORITIES

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
    § 23:51 (5th ed. 2025) ............................................................................. 25

2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*
    § 7.16[B][5][b] (2022 ed.) ........................................................................ 12

Mitchell
Silberberg &
Knupp LLP

20721274.1

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants PlayerAuctions, Inc.; IMI Exchange LLC; Paiao Network Technology (Shanghai) Co. Ltd. (拍奥网络科技（上海）有限 公司), a/k/a PlayerAuctions (SH) Co. Ltd.; and Does 1 through 10 (collectively, "PlayerAuctions" or "Defendants") own and operate a vast online marketplace offering thousands of listings for unauthorized, infringing *Grand Theft Auto V* ("GTA V") content—including heavily modified player accounts containing highly coveted weapons and automobiles, as well as massive amounts of virtual currency—all gained through illegal hacking software, cheats, and technical exploits.  As the Complaint makes clear, PlayerAuctions is a lawless enterprise; the so-called "GTA Marketplace" that it operates, supervises, and profits from, and which it makes available at https://www.playerauctions.com/gta-marketplace/ (defined by the Complaint as the "Website"), constitutes commercialized infringement of Take-Two's copyrights and trademarks on an industrial scale.

The Motion to Dismiss (the "Motion") is little more than PlayerAuctions' desperate ploy to paint itself as a legitimate business.  The Motion attempts to explain away PlayerAuctions' illegitimate actions through various, almost frivolous, theories.

***First***, PlayerAuctions makes the far-fetched argument that Take-Two has not obtained the requisite copyright registration for GTA Online.  As the Complaint alleges, GTA Online is the online ***mode*** of GTA V, which undisputedly has been registered with the Copyright Office.  As the application of fundamental copyright principles demonstrates, Take-Two has plausibly alleged what is painfully obvious to any consumer: GTA Online is not a separate game from GTA V—rather, GTA Online is ***a way to play*** GTA V, or is, at the very least, a derivative work of GTA V encompassed by GTA V's copyright registration.

Mitchell Silberberg & Knupp LLP

20721274.1

***Second***, PlayerAuctions professes it needs more information to determine which images on its Website are infringing. As alleged in the Complaint, ***all the images of GTA V in PlayerAuctions' so-called "GTA Marketplace" are infringing***. PlayerAuctions also tries to portray itself as a "passive platform" that has nothing to do with what its users post. However, as the Complaint makes clear, PlayerAuctions actively solicits, supports, and has built its business on the infringing content at issue; PlayerAuctions is not Zillow or eBay. This argument does not stand up to the Complaint's well-pleaded allegations, the law, or reality.

***Third***, PlayerAuctions disingenuously argues that it has no obligation to uphold Rockstar's Terms of Service ("TOS"), and thus cannot be secondarily liable for copyright infringement when it encourages GTA players to breach the conditions and restrictions of the limited license granted under the Rockstar TOS, including by making commercial use of GTA V and modifying the game's software and gameplay experience. PlayerAuctions' argument is based on cherry-picking a few isolated sentences, out of context, from the TOS, while blatantly ignoring the Complaint and its explicit references to TOS provisions that restrict the scope of the limited license and impose fundamental conditions on access to and use of GTA V. On a motion to dismiss, the Complaint's well-pleaded allegations, supported by the TOS itself, must be accepted as true and PlayerAuctions' argument must be rejected.

***Fourth***, PlayerAuctions' infringing use of Take-Two's trademarks is not a protected nominative fair use, and certainly cannot be deemed as such on a motion to dismiss. As alleged in the Complaint, PlayerAuctions extensively incorporated Take-Two's marks in its "GTA Marketplace" on its Website and in its advertisements, all with an eye towards trading off Take-Two's goodwill. This is precisely the sort of trademark infringement to which the nominative fair use defense does not extend. The sole fact that PlayerAuctions bills its product and services as offering "Legit GTA Accounts" speaks volumes.

*Fifth*, PlayerAuctions asserts a confusing, and legally baseless, argument that Take-Two is required to allege some "independently wrongful act" in support of its claim for intentional interference with contractual relations.  PlayerAuctions misapprehends the law.  A plaintiff need only plead an "independently wrongful act" for such a claim where a third party induces the ***termination*** of an at-will contract.  This rule has absolutely nothing to do with the ***breach*** of a contract, which the Complaint alleges is the subject of Take-Two's claim for interference.

PlayerAuctions' transparently insincere attempts to distract from or misrepresent the well-pled allegations in the Complaint are at best ineffective, and at worst, reflect bad faith.  PlayerAuctions' Motion should be denied.

## II.    GOVERNING LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) governs the legal sufficiency of claims brought in a complaint.  In reviewing a motion to dismiss, courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008) (reversing grant of motion to dismiss).  To overcome a motion to dismiss, a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and contain sufficient allegations to provide PlayerAuctions with "fair notice" of the claim and its basis.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Dismissal is appropriate only where the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013).  Additionally, "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Manzarek*, 519 F.3d at 1031; *Dale v. Wells Fargo Bank, N.A.*, No.

22-56031, 2023 WL 8889554, at *1–2 (9th Cir. Dec. 26, 2023) (same; reversing grant of motion to dismiss and refusal of leave to amend).

## III.    ARGUMENT

### A.    <u>The Complaint Plausibly Alleges Copyright Infringement.</u>

PlayerAuctions advances a number of theories regarding Take-Two's copyright claims, including that: (1) Take-Two lacks a valid copyright registration for GTA Online; (2) the Complaint does not plead its claim for direct infringement with sufficient specificity or identify affirmative acts of infringement on PlayerAuctions' part; and (3) Take-Two's claims for secondary liability are not premised on breaches of conditions in the Rockstar TOS that might give rise to a cause of action for infringement.  Each of these theories ignores the law and cannot overcome the well-pled allegations in the Complaint.

#### 1.    Take-Two's Copyright Registrations for GTA V Meet the Registration Requirement.

PlayerAuctions' theory that GTA V and GTA Online are two separate games requiring separate copyright registrations is legally and factually baseless.

As Take-Two's Complaint makes clear, GTA Online is not a separate game; it is the multiplayer mode for GTA V that enables players to play the game online with others.  *See* Complaint, ¶ 1 ("***GTA V*** has sold more than 205 million copies, *and its multiplayer online mode, Grand Theft Auto Online ...* "); ¶ 18 ("First released in 2013, ***GTA V, including its multiplayer online component Grand Theft Auto Online*** ...") (emphasis added); *see also Take-Two Interactive Software, Inc. v. Zipperer*, No. 18 CIV. 2608 (LLS), 2018 WL 4347796, at *9 (S.D.N.Y. Aug. 16, 2018) (*Grand Theft Auto Online* is the "multiplayer feature" *of Grand Theft Auto V*).  Take-Two possesses at least ***four*** separate copyright registrations for GTA V.  *See* Complaint, ¶ 27 and Exhibit A.  These allegations must be accepted as true.  *Manzarek*, 519 F.3d at 1031.  Indeed, the fact that GTA Online is

a mode or component of GTA V is made clear from the Game's outside packaging. *See* Request for Judicial Notice, Exhibit 1 (commercial packaging for GTA V, reading "featuring *Grand Theft Auto Online*").  Even PlayerAuctions frequently refers to "GTA 5" or to "GTA 5 Online" as being synonymous with GTA Online. *See, e.g.,* Complaint, ¶¶ 30, 41, 44; Mot. at 23, 26 (putative disclaimer referring to "GTA 5 Online").

Even there were any merit to PlayerAuctions' claim that GTA Online is a different "game" (which there is not), its argument still fails because GTA Online plainly is a derivative work of GTA V, utilizing GTA V's artwork, character models, in-game assets, and underlying software code.  Thus, any registration for GTA Online would merely be additive to the prior copyright registrations for GTA V.  *Zipperer*, 2018 WL 4347796, at *9 ("an alternative version of GTAV which is based on Take-Two's GTAV but with added elements that allow its users to use features not available in the original version of GTAV . . .  likely constitutes a derivative work which Take-Two has the exclusive right to create under 17 U.S.C. § 106"); 17 U.S.C. § 101 (A "derivative work" is a work based upon one or more preexisting works, . . . [which is] recast, transformed, or adapted.").  "So long as the infringement relates to material common to both the underlying and derivative work, the copyright owner can simply allege violation of the former."  2 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright,* § 7.16[B][5][b] (2022 ed.). *See also, e.g., Klauber Bros., Inc. v. Russell–Newman, Inc.*, No. 11 Civ. 4985(PGG), 2013 WL 1245456 at *5 (S.D.N.Y. Mar. 26, 2013) ("The owner of a derivative work may maintain a copyright action against an alleged infringer, based on any infringement of the pre-existing work from which the derivative work is derived.").  The Complaint alleges infringement of GTA V, not of GTA Online as a putative "second game."  *See* Complaint, ¶¶ 46–60.

Accordingly, Take-Two has more than satisfied the copyright registration prerequisite.  *See Fourth Est. Pub. Benefit Corp. v. WallStreet.com, LLC*, 586 U.S. 296, 299 (2019).

### 2.     The Complaint Plausibly Alleges Direct Copyright Infringement.

PlayerAuctions argues that the Complaint fails to state a claim for direct infringement because Take-Two did not plead direct infringement with requisite specificity, and because the Complaint purportedly does not allege "volitional conduct" on the part of PlayerAuctions.  Mot. at 12.  These arguments easily fail.

### a.     Take-Two Pleads Direct Infringement with Sufficient Specificity.

To establish copyright infringement, the plaintiff must demonstrate (1) ownership of a valid copyright and (2) copying of protectable expression by the defendant.  *Baxter v. MCA, Inc*., 812 F.2d 421, 423 (9th Cir. 1987).  "Infringement occurs when a defendant violates one of the exclusive rights of the copyright holder, 17 U.S.C. § 501(a), including the right to reproduce the copyrighted work, to prepare derivative works, to distribute copies to the public, and to publicly display the work, *id*. § 106."  *BMG Rts. Mgmt. (US) LLC v. Joyy Inc*., 716 F. Supp. 3d 835, 841 (C.D. Cal. 2024).

Take-Two is the registered copyright owner of GTA V, a valid and original copyrighted work.  As alleged in the Complaint, PlayerAuctions "have infringed, and are continuing to infringe, Take-Two's copyrights in GTA V by reproducing, distributing, and publicly displaying, and by knowingly authorizing others to reproduce, distribute, publicly display, copyrighted elements of GTA V, and/or copyrighted elements of unauthorized derivative versions thereof, without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*."  Complaint, ¶ 48.  The Complaint alleges that the locus of this infringement is

Mitchell Silberberg & Knupp LLP

20721274.1

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

PlayerAuctions' so-called "GTA Marketplace" (defined *as* the "Website"),[1] where PlayerAuctions offers and displays "thousands of listings for unauthorized, infringing GTA V content," often accompanied by "infringing images of gameplay generated from 'modded' versions of GTA V." *See e.g.*, Complaint ¶¶ 2 & n.1, 29–30, 31, 42, 48.  Moreover, *any* reproduction of Take-Two's copyrighted game made without permission or authorization from Take-Two is infringing, meaning that *all* images of GTA V in PlayerAuctions' "GTA Marketplace," regardless of how derived, infringe Take-Two's copyright in GTA V.  *Rosen v. Imagevenue.com*, No. CV1301742SJOMANX, 2013 WL 12132052, at *2 (C.D. Cal. Nov. 26, 2013) (plaintiff plausibly stated a claim for direct copyright infringement by alleging defendants copied and displayed his photographs on various websites without his permission).  To the extent *any* selected portion of GTA V gameplay (including infringing gameplay) is depicted on the PlayerAuctions Website, it has engaged in an act of copyright infringement. PlayerAuctions cannot credibly claim that lacks notice of the nature of its infringement, and its feigned ignorance does not render the Complaint insufficient under Rule 8.

PlayerAuctions' reliance on *Thumbtack* is misplaced. Mot. at 12.  The *Thumbtack* complaint alleged, among other things, that the defendant copied some vague "text" from Thumbtack's website.  *Thumbtack, Inc. v. Liaison, Inc*., No. 23-cv-02830-WHO, 2024 WL 235172, *6 (N.D. Cal. Jan. 22, 2024).  Thumbtack, however, did not specify if all the text was infringed, or just a few words (and if so, which words), or how or where it was used by defendant.  *Id.* at *3.  That is a far cry from Take-Two's allegations.  Here, images of the work—GTA V, modded or not—are infringing; again, as the Complaint states clearly, *none* of the depictions

---

[1] The Motion ignores this definition of "Website," claiming that Defendants cannot discern "how [the] allegedly infringing images might be distinguished from other, non-infringing images on the PlayerAuctions website." Mot. at 12.  Although additional images on the website found at www.playerauctions.com may be infringing, the GTA Marketplace is the focus of the Complaint.

Mitchell Silberberg & Knupp LLP
20721274.1

1  of GTA V within the PlayerAuctions "GTA Marketplace" are authorized.

2  Complaint ¶¶ 42–43.

3      It is well-established that "[c]opyright claims need not be pled with

4  particularity." *Famous Birthdays, LLC v. SocialEdge, Inc.*, No. CV 21-9562 PA

5  (MRWx), 2022 WL 1591723, at *4 (C.D. Cal. Apr. 15, 2022) (quoting *Perfect 10,*

6  *Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001));

7  *Hahaas Comedy, LLC. v. Girgis*, No. CV-17-6199-MWF (FFMx), 2017 WL

8  10399452, at *3 (C.D. Cal. Nov. 29, 2017) (quoting 3 *Nimmer on Copyright* §

9  12.09 (2017), noting "the modern view disclaims any heightened pleading standard

10  in the copyright ambit").  The Complaint's allegations that PlayerAuctions directly

11  infringes GTA V by hosting and displaying images of GTA V gameplay—and in

12  particular, user-uploaded images that are used to promote the "listings" in its

13  "GTA Marketplace"—more than adequately meets the standards of Rule 8.

14          **b.      The Complaint Plausibly Alleges Volitional Conduct**

15                 **by PlayerAuctions.**

16      PlayerAuctions next argues that the Complaint fails to allege its "volitional

17  conduct," disingenuously comparing its infringing platform to a legitimate third-

18  party sales platform (*e.g.*, eBay).  Mot. at 12–13.  Its comparison is wholly flawed.

19      Whether a listing platform acts with "volition" is not limited to instances

20  where a defendant "select[s] any material for upload, download, transmission, or

21  storage."  Mot. at 13.  Indeed, as PlayerAuctions admits, volitional conduct can

22  also be demonstrated if the listing platform "exercises control" over the platform or

23  "instigates" the users' "copying, storage, or distribution."  *See id.* at 12–13; *BMG*,

24  716 F. Supp. 3d at 842 (plaintiff failed to allege volitional conduct where it was

25  unable to identify a single instance in which defendants promoted content that

26  infringed on plaintiff's copyrighted works); *Blackstone Int'l, Ltd. v. E2 Ltd.*, 2022

27  WL 16553034, at *10 (W.D. Wash. Oct. 31, 2022) (on 12(b)(6) motion, volitional

28

conduct requirement was met where plaintiff alleged that defendant "at least instigated the distribution and sale of the offending material").

The Complaint makes clear that PlayerAuctions designed its Website specifically and intentionally to promote, distribute, and profit from unauthorized, infringing content, while carefully controlling its marketplace in all aspects. Complaint, ¶¶ 29–42. The facts alleged here are readily distinguishable from those in cases where online platforms are designed to promote legitimate listings and do not support or manage the upload of infringing content beyond a general, automated operation of their websites. *See, e.g.*, *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 733 (9th Cir. 2019) (noting that Zillow "actively designed its system to avoid and eliminate copyright infringement"). By way of example, PlayerAuctions provides video tutorials that assist users in selling infringing content, "promotes" its most successful sellers (all of whom only deal in infringing products), "keeps an eye out on all transactions," and offers "after-sale protection" in the event that buyers' illegitimate accounts are flagged by Take-Two's anti-cheat systems. Complaint, ¶¶ 4, 35-36, 38. These well-pleaded allegations fully demonstrate PlayerAuctions is not a "passive participant" when users sell and promote the infringing products and services on which its "GTA Marketplace" is built.

### 3.     The Complaint Plausibly Alleges Indirect Copyright Infringement.

PlayerAuctions offers a single argument in response to the Complaint's allegations of indirect, or secondary, copyright infringement: that Take-Two's claims purportedly are premised on alleged breaches of covenants, not of conditions, in the Rockstar TOS. Mot. at 14. PlayerAuctions agrees that breach of any provision on which a license is conditioned constitutes copyright infringement, while a breach of any other license term, *i.e.* a "covenant," is actionable only under contract law. *Applied Bus. Software, Inc. v. Citadel Servicing Corp.*, No.

1  SACV1701627CJCJCGX, 2017 WL 10340544, at *3 (C.D. Cal. Nov. 21, 2017).

2  But the distinction between "conditions" and "covenants" does not assist

3  PlayerAuctions, since the Complaint clearly alleges that the users of the

4  PlayerAuctions Website have breached **conditions** in the TOS.

5      The factors that determine whether a license provision is a condition rather

6  than a covenant are well-established.  A condition is a "qualification" to the

7  parties' obligations; "if it occurs, the interest is terminated or enlarged." *San*

8  *Mateo Cmty. Coll. Dist. v. Half Moon Bay Ltd. P'ship*, 65 Cal. App. 4th 401, 411

9  (1998), *as modified* (July 1, 1998).  Additionally, while contracts are to be

10  construed under applicable state law, the Ninth Circuit instructs that, in accordance

11  with federal copyright policy, "copyright licenses are assumed to prohibit any use

12  not authorized," and that "[a] licensee infringes the owner's copyright if its use

13  exceeds the scope of its license." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081,

14  1078–88 (9th Cir. 1989).  *See also, e.g.*, *John Wiley & Sons, Inc. v. DRK Photo*,

15  998 F. Supp. 2d 262, 287 (S.D.N.Y. 2014), *aff'd*, 882 F.3d 394 (2d Cir. 2018) ("It

16  is black-letter law that a claim for copyright infringement lies when a party's use

17  of copyrighted material exceeds the scope of its license.") (collecting cases).

18      At least one other court already has considered whether the restrictions in

19  Take-Two's limited license to users in its TOS for GTA V are "conditions"

20  sufficient to support a claim for copyright infringement, and it rejected

21  PlayerAuctions' argument.  In *Take-Two Interactive Software, Inc. v. Zipperer*, the

22  Southern District of New York held that the defendant infringed Take-Two's

23  copyright in GTA V by creating unauthorized modifications of the game, since

24  "the user agreement authorized [defendant] to run GTAV on his computer

25  **provided that** he complied with the terms … which included **a prohibition on**

26  **modifying the program and creating derivative works based on the program**."

27  *See Zipperer*, 2018 WL 4347796, at *2–3 (emphasis added).

28      The Complaint plainly alleges that PlayerAuctions' users failed to comply

Mitchell
Silberberg &
Knupp LLP
20721274.1

17

with provisions on which their access to and use of GTA V was conditioned. These allegations include, by way of example:

- "[b]y agreeing to the Rockstar TOS, players … are granted a limited, non-exclusive, and non-transferable license to access and use GTA V, virtual in-game items, and related products and services, ***strictly for their own personal and non-commercial use***" (Complaint, ¶ 23);

- the Rockstar TOS "***conditions its limited license on users agreeing to not undertake any unauthorized modification or 'hacking' of GTA V's software,***" including "in ways that would alter the GTA V gameplay experience," and that PlayerAuctions' users who "create, use, and commercially trade in such unauthorized derivative versions of GTA … ***exceed the limited scope of the Rockstar TOS*** and infringe Take-Two's copyrights in GTA V" (*id., ¶¶* 25, 71);

- by selling "modded accounts," "money drop services," and account "boosting services" for GTA V—including through its arrangements with the so-called "Power-Sellers" it recruits—PlayerAuctions facilitates and encourages modification of GTA V's source code and gameplay so as to offer players "***an otherwise impossible [game] experience … only possible by hacking and modifying the GTA V game in breach of the Rockstar TOS***"—or in other words, through techniques that involve "***unauthorized modification and adaptation of GTA V and its component software***" (*id., ¶¶* 29-33, 36-37, 40); and,

- as a predicate to PlayerAuctions' secondary liability, "users of the of PlayerAuctions Website engaged in ***unauthorized reproduction, distribution, adaptation, and/or display of GTA V, or of copyrighted elements thereof***, when they ***created, used, disseminated, and promoted*** versions of GTA V that modified creative and gameplay elements of

GTA V and ***exceeded the scope and conditions of the Rockstar TOS***." (*id., ¶¶* 55, 63).

On its face, the Complaint plainly and plausibly alleges multiple user actions that exceed the scope and conditions of the limited license granted under Take-Two's TOS.

PlayerAuctions also ignores the relevant portions of the Rockstar TOS itself, instead merely cherry-picking isolated portions and then claiming that the TOS "merely delineate[s] 'acceptable' and 'unacceptable behavior under the licensing agreement." Mot. at 15–16. PlayerAuctions intentionally overlooks and omits the core language of the TOS setting out the actual scope of the license (TOS Sections 2.2 and 2.3), as well as the Complaint's clear allegations that the unauthorized conduct at issue exceeds that scope.

Specifically, Section 2.2 of the TOS, titled "Personal, Non-Commercial Use Only," states that "a limited, non-exclusive, non-transferable, non-sublicensable, revocable license" is granted to users "[s]ubject to the terms of this Agreement," to "access and use the Services," for "personal, non-commercial use," before proceeding to set out a full paragraph of "Restrictions." That paragraph reads:

> **2.3. Restrictions.**
> The limited license granted in this Agreement does not give you any right to, and you may not, sell, copy (except under applicable legal exceptions such as the "private copy" exception under applicable law), loan, lease, distribute, disassemble, decompile, decrypt, ***hack***, derive source code from, reverse engineer …, ***modify***, ***create derivative works***, ***commercialize***, or ***otherwise exploit*** the Services (including the Content), Virtual Items, or your Account ***unless subject to*** separate, express written terms provided by Rockstar permitting such conduct.

*See* ECF 1-1 at 30 (emphasis added); *see also* ECF 20-1 at 9.

These "restrictions" on the license—which ***require*** players to seek Take-Two's written authorization for uses of the GTA V software beyond those narrowly permitted—do far more than merely dictate "acceptable and unacceptable behavior." ***The restrictions explicitly delineate the uses to which Take-Two's***

Mitchell
Silberberg &
Knupp LLP

20721274.1

1  ***license extends and does not extend, thereby identifying conduct that is***

2  ***infringing***.[2]  *S.O.S.*, 886 F.2d at 1088 ("A licensee infringes the owner's copyright

3  if its use exceeds the scope of its license.").  Furthermore, the language describing

4  these restrictions clearly track the "linguistic conventions of condition."  *Sohm v.*

5  *Scholastic Inc*., 959 F.3d 39, 46 (2d Cir. 2020) (cleaned up), *abr. on other grounds*

6  *by Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024) (noting that

7  conditional language includes words such as "if," "subject to," and "unless and

8  until"); *see also, e.g., MHR Cap. Partners LP v. Presstek, Inc.,* 12 N.Y.3d 640, 645

9  (2009) (words such as "unless" constitute "unmistakable language of condition").

10      Such agreements, which prohibit unauthorized modification and/or

11  commercial use of software, support claims for copyright infringement, especially

12  when assessed on a motion to dismiss.  *See, e.g., Lasica v. Am. Online, Inc.*, No.

13  CV 15-4230-GW(FFMx), 2015 WL 12791494, at *3 (C.D. Cal. Oct. 8, 2015)

14  (plaintiff plausibly alleged copyright infringement claim by alleged violation of

15  commercial use restriction) (collecting cases); *Crowley v. Jones,* 608 F. Supp. 3d

16  78, 88 (S.D.N.Y. 2022) (plaintiff plausibly alleged that "requirement of photo

17  credit was a condition of the license," supporting infringement claim); *LGS*

18  *Architects, Inc. v. Concordia Homes of Nevada,* 434 F.3d 1150, 1156–57 (9th Cir.

19  2006) (on motion for preliminary injunction, plaintiff was likely to prevail on

20  copyright claim where license concerning architectural plans prohibited use

21  beyond a single project without copyright owner's "express written permission");

22  *see also Zipperer*, 2018 WL 4347796, at *2–3, 8 ("alternative version of GTA …

23

24  [2] The language of these Sections, together with the facts alleged in the Complaint, also sharply differentiate this case from *MDY Indus., LLC v. Blizzard Ent., Inc.*,

25  629 F.3d 928 (9th Cir. 2010).  The panel in *MDY* viewed the "anti-bot" provisions of the Terms of Use for *World of Warcraft* to be essentially a ban on certain types

26  of "disfavored conduct," stressing that the "Glider" bot, which automatically played the game's early levels, but did only that, did "not alter or copy [the

27  game's] software." *Id.* at 941.  The panel contrasted this with a separate prohibition on creating derivative works, which it acknowledged would have

28  "exceed[ed] the scope of [the user's] license and violate[d] one of Blizzard's exclusive rights under the Copyright Act." *Id.*

with added elements" enabled by defendant's software likely constituted an infringing derivative work, and defendant also likely infringed Take-Two's copyright by his "continued use of [GTA V]" following breach) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993)).

Therefore, the Complaint plausibly alleges that PlayerAuctions knowingly contributes to, profits from, and induces the copyright infringement of its users, through uses not sanctioned under any license.[3]

## B.  The Complaint Plausibly Alleges Trademark Infringement.

PlayerAuctions' trademark infringement theory is fundamentally flawed for many of the same reasons discussed above:  the fact that PlayerAuctions has built an entire enterprise that illegitimately trades on Take-Two's trademarks and goodwill renders its arguments against trademark infringement absurd.

Arguing that the Complaint fails to state a claim for infringement of Take-Two's trademark rights, PlayerAuctions initially errs by applying the standard likelihood of confusion factors instead of the nominative fair use analysis. Where, as here (Mot. at 24–26), a defendant uses the plaintiff's mark to describe the plaintiff's product (even if the defendant's ultimate goal is to describe its own product), the nominative fair use analysis developed in *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) applies and "*replaces* the likelihood of customer confusion analysis set forth in *Sleekcraft*." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis in original) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)).[4]

---

[3] Notably, the Motion appears to entirely ignore that, as addressed in Part III(A)(2) above, the infringing acts of PlayerAuctions' users include uploading of infringing materials to the PlayerAuctions Website, for which the Complaint also alleges PlayerAuctions' contributory and vicarious liability.  *See, e.g.,* Complaint, ¶¶ 55, 63.  By Defendants' logic, this too would entail mere breach of a contractual covenant, pointing up the absurdity of their argument.

[4] Beyond their lack of relevance, it is worth noting that the authorities PlayerAuctions cites *vis-à-vis* likelihood of confusion are not even factually analogous.  *See Yaros v. Kimberly Clark Corp.*, No. 17CV1159-GPC(BGS), 2018 WL 1744675, *3 (S.D. Cal. Apr. 11, 2018) (plaintiffs "[did] not even specify

1    The nominative fair use doctrine allows a third party to use a trademark only
2    when three conditions are met: (1) the product or service cannot be identified
3    without using the mark; (2) only as much of the mark is used as necessary; and (3)
4    the user does "***nothing*** that would, in conjunction with the mark, suggest
5    sponsorship or endorsement by the trademark holder." *New Kids on the Block*, 971
6    F.2d at 308 (emphasis added).  Because PlayerAuctions markets unlawful and
7    infringing products, such as illicit "modded" accounts, and advertises those
8    accounts as "Legit GTA Accounts" (Complaint, ¶ 44), this defense is clearly
9    inapplicable.

10    The nominative fair use defense typically is appropriate only where
11    defendants make minimal, necessary reference to plaintiffs' marks for purposes of
12    comparison or criticism.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d
13    1171, 1176-77 (9th Cir. 2010) (injunction prohibiting broker of Lexus automobiles
14    from referencing the LEXUS mark was too broad, since it would have prohibited
15    honest communication between broker and its customers); *New Kids on the Block*,
16    971 F.2d at 306 (newspapers using musical group's trademark in polls on group's
17    popularity were entitled to defense, as "it is often virtually impossible to refer to a
18    particular product for purposes of comparison, criticism, point of reference or any
19    other such purpose without using the mark").  Where a defendant exceeds that
20    legitimate descriptive use—and particularly where a defendant intends to profit off
21    the plaintiff's creation and goodwill—the nominative fair use defense is
22    inapplicable.  *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d
23    1206, 1211, 1215 (C.D. Cal. 1998) (enjoining a publisher from use of the Godzilla
24    mark where the use was extensive and purely commercial).

25    Here, the Complaint does not allege that PlayerAuctions references Take-
26    Two's marks on its Website for typical descriptive purposes, such as product

27    _____
28    which of Defendants' products [was] utilizing their trademark[]"); *Performance Designed Prods. LLC v. Plantronics, Inc.*, No. 3:19-CV-00536-GPC-LL, 2019 WL 3082160, at *5 (S.D. Cal. July 15, 2019) (same).

comparison or critique.  Rather, the Complaint alleges that PlayerAuctions created a full-blown, illegitimate marketplace based off GTA V, and attempts to trade on Take-Two's goodwill by selling its own GTA V-related (illegal) products, making repeated use of Take-Two's marks in ways that plausibly imply Take-Two's endorsement or involvement.  *See, e.g.,* Complaint, ¶¶ 30, 41, 44, 78, 85.  This is precisely the sort of conduct that does not constitute nominative fair use.  *Digital Theater Sys., Inc. v. Mintek Digital, Inc.*, No. 02-902 CJC (ANX), 2004 WL 1746251, at \*5 (C.D. Cal. May 25, 2004) (no nominative fair use where defendant sold goods affixed with plaintiff's trademark without plaintiff's authorization, in order to "obtain advantage from [plaintiff's] good will").

Even if PlayerAuctions were justified in making some reference to Take-Two's marks while marketing its products, the Complaint demonstrates that such use far exceeds what is necessary.  For example, the Complaint alleges that PlayerAuctions prominently displays the term "PlayerAuctions GTA Marketplace" as the gateway to its listings, references GTA V in imagery appearing on its Website, references GTA in its advertisements (*e.g.* "Legit GTA Accounts," "GTA Money Market," "Sell GTA Accounts Today"; "Buy GTA Money"), and juxtaposes such uses with PlayerAuctions' own name and logo.  Complaint ¶ 44.  Such conduct clearly exceeds the sort of minimal descriptive use that the nominative fair use defense aims to protect.  *Toho*, 33 F. Supp. 2d at 1211 (C.D. Cal. 1998) (defendant used more of plaintiff's marks than was necessary by prominently displaying plaintiff's mark in bold lettering on its book); *Summit Ent., LLC v. B.B. Dakota, Inc.*, No. CV1004328GAFRZX, 2011 WL 13216987, at \*9 (C.D. Cal. Nov. 21, 2011) (defendant made overly extensive use of plaintiff's "Twilight" marks by renaming its product "Twilight" and advertising it as the "Twilight Jacket"); *BMW of N. Am., LLC v. Mini Works, LLC*, No. CV-07-1936-PHX-SMM, 2010 WL 11484171 at \*14 (D. Ariz. Sept. 27, 2010), *aff'd sub nom. BMW of N. Am. v. Mini Works, LLC*, 463 F. App'x 689 (9th Cir. 2011) (rejecting

Mitchell
Silberberg &
Knupp LLP

20721274.1

23

1  nominative fair use defense when the defendants used more of plaintiff's mark

2  than necessary, including images of Mini Cooper vehicles on their website).

3       A defendant's extensive use of a plaintiff's trademarks, at the very least,

4  implies sponsorship of the defendant's goods.  *Summit*, 2011 WL 13216987, at *9;

5  *Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMX), 2023 WL 7089922, at *8

6  (C.D. Cal. Oct. 25, 2023) ("Defendants' use of [the plaintiff's] Marks 'prominently

7  and boldly,' to market their [products] clearly 'suggest[s] sponsorship.'") (quoting

8  *Brother Recs., Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003)).  And here, as the

9  Complaint alleges, PlayerAuctions even incorporates the GTA marks by

10  advertising ***"Legit GTA Accounts"—a phrase that obviously creates a***

11  ***connotation of sponsorship or endorsement***.  Complaint, ¶ 44.

12       Finally, PlayerAuctions' invocation of the obscure disclaimer located at the

13  bottom of its Website (which oddly says that PlayerAuctions is not "***directly***

14  affiliated with … GTA 5 Online or its trademark owner") is irrelevant, and cannot

15  overcome the suggestion of sponsorship.  *See* Mot. at 26 (emphasis added); *Home*

16  *Box Off., Inc. v. Showtime/The Movie Channel Inc*., 832 F.2d 1311, 1315 (2d Cir.

17  1987) (identifying "a body of academic literature that questions the effectiveness

18  of disclaimers").  The purported "disclaimer" is located far below the listings that

19  create a false connotation with Take-Two, and does not appear ***at all*** on its

20  advertisements (such as for "Legit GTA Accounts").  Moreover, PlayerAuctions'

21  disclaimer is displayed in gray text against a black background, at the bottom of a

22  webpage where few users will likely scroll or read.  *BMW*, 2010 WL 11484171 at

23  *14 (defendant's disclaimer was insufficient to overcome suggestion of

24  sponsorship, as it was located at the bottom of the webpage in small font);

25  *TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820, 828 (9th Cir. 2011) (finding

26  that defendant's site design mimicked plaintiff's website by copying slogans and

27  symbols, and defendant's disclaimer was "easy to miss because it was displayed in

28  small font at the bottom of each page, where many consumers would never

scroll").[5]  In reality, an inconspicuous disclaimer buried in misrepresentations does nothing to dispel a perceived sponsorship or endorsement of PlayerAuctions' products.  If anything, it indicates only that PlayerAuctions knew that a false perception might be likely.[6]

## C.  <u>PlayerAuctions' Argument That An "Independently Wrongful" Act Is Required For Take-Two's Interference Claim Misconstrues The Law.</u>

PlayerAuctions does not, and cannot, dispute that the Rockstar TOS is a binding and enforceable contract between Take-Two and GTA V players (Complaint, ¶ 90), that the purchase and use of virtual items by GTA V players is a breach of the TOS (¶ 91), that PlayerAuctions is aware of the existence and terms of the TOS (¶ 91), and that PlayerAuctions induces and exhorts GTA V players to engage in such breaches (*id.*).  Thus, Take-Two has alleged all of the elements of a claim for intentional interference with contract.  *See Blizzard Ent. Inc. v. Ceiling Fan Software LLC,* 28 F. Supp. 3d 1006, 1015 (C.D. Cal. 2013) (granting summary judgment for video game publisher against seller of prohibited software bot: "In California, "[t]he elements ... for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's

---

[5] In fact, as pointed out in a leading treatise, "[i]n some instances, the use of a disclaimer may serve to aggravate, not alleviate, confusion over brands."  3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:51 (5th ed. 2025) (citing *E. & J. Gallo Winery v. Gallo Cattle Co.*, 12 U.S.P.Q.2d 1657, 1989 WL 159628, *19 (E.D. Cal. 1989), *aff'd*, 967 F.2d 1280 (9th Cir. 1992)).

[6] In support of its use of a disclaimer, PlayerAuctions cites to authorities that are wholly inapposite.  *See, e.g., Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10cv974 DMS (CAB), 2011 WL 1630809, at *3 (S.D. Cal. Apr. 28, 2011) (finding that defendant did not attempt to create an affiliation with plaintiff's products because the references to plaintiff on defendant's website were negative and only provided to draw a distinction between the parties' products); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610–11 (6th Cir. 2009) (plaintiff failed to allege that defendant marked any products with plaintiff's marks); *Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*, 756 F. Supp. 280, 282 (W.D. La. 1991), *aff'd*, 988 F.2d 587 (5th Cir. 1993) (retailer's unauthorized sale of manufacturer's genuine hair care products, in conjunction with a disclaimer that retailer was not an authorized distributor, was not likely to cause confusion).

Mitchell Silberberg & Knupp LLP

20721274.1

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.").  *See also MDY Indus., LLC v. Blizzard Entm't, Inc*., 629 F.3d 928, 955 (9th Cir. 2010) (affirming intentional interference claim based on videogame's Terms of Use).

PlayerAuctions' argument that the claim should be dismissed because Take-Two did not also allege an "independently wrongful act" (Mot. at 27) is incorrect. "Unlike the related tort of intentional interference with prospective economic advantage (which is not asserted here), intentional interference with contractual relations *does not require that a defendant's conduct be independently wrongful*."  *Ceiling Fan,* 28 F. Supp. 3d at 1015 (emphasis added), *citing Quelimane Co. v. Stewart Title Guar. Co*., 19 Cal. 4th 26, 55 (1998) ("Because interference with an existing contract receives greater solicitude than does interference with prospective economic advantage, it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself.") (internal citations omitted).  Whether the TOS may be validly *terminated* by the player (and thus purportedly is an "at will" contract) does not change the analysis or convert Take-Two's contractual interference claim into a claim for interference with "prospective economic advantage."  This is because PlayerAuctions is not alleged to have induced players to exercise their right to *terminate* the TOS—that is, to cease playing the game and end their relationship with Take-Two.  (In fact, if PlayerAuctions' customers did so, PlayerAuctions' business would be pointless.)  Instead, PlayerAuctions encourages and induces players to *violate* their obligations under the TOS (*e.g*., by creating, commercializing, and using modified versions of GTA V) while simultaneously retaining the benefits of that agreement (accessing GTA Online and playing online with other users).

The distinction between permissible **termination** and improper **breach** is critical, and renders *Ixchel Pharma, LLC v. Biogen, Inc.,* 9 Cal. 5th 1130 (2020) (on which PlayerAuctions places primary reliance) completely distinguishable.  A person who terminates or chooses not to extend an at-will contract has not violated their contractual obligations, and thus the person that induces such a termination is not inducing a **breach**.  That was the case in *Ixchel,* in which the defendant was alleged to have induced a third party to "withdraw from [its] agreement [with plaintiff], *as was allowed by its terms*."  *Id.* at 1137 (emphasis added).  Indeed, the terminating party in *Ixchel* fully complied with the termination clause in its contract, including by providing 60 days' notice.  *Id.* at 1140.  By contrast, where a GTA V player violates their contractual obligations *without* terminating the contract, such as by engaging in conduct that is prohibited by the TOS, that is an improper act that will subject the player to liability for breach.  *See Ravel v. Hubbard*, 112 Cal. App. 2d 255, 259 (1952) ("Where a contract is terminable at will, liability attaches for breaches occurring prior to the termination of the contract"); *see also Md. Jockey Club v. ODS Techs., L.P.,* No. CIV. WMN-03-2124, 2005 WL 1200181, at *9 (D. Md. May 20, 2005) ("While a cursory review of … the Restatement might lead one to conclude that economic competition typically justifies any non-egregious actions that induce the breach of a contract terminable at will, a closer reading shows that economic competition only justifies inducing the *termination* of that contract.") (emphasis in original).[7]

Here, PlayerAuctions' entire business depends upon its customers engaging in ongoing and repeated violations of the TOS while continuing to access GTA

---

[7]  To further illustrate the difference between these concepts, consider the employment context:  A company that persuades an employee of a competitor to quit a job (and thereby terminate an at-will employment agreement) has not induced a breach of the employment agreement, and thus will be liable only if its conduct is independently wrongful.  On the other hand, if the company persuades a competitor's employee to secretly breach confidentiality obligations by copying and disclosing internal documents, that is an interference with an existing contractual relationship, and no additional "wrongful conduct" is required.

Online and otherwise retaining the benefits of their agreement with Take-Two. *See Am. Airlines, Inc. v. Platinum World Travel,* 769 F. Supp. 1203, 1206 (D. Utah 1990), *aff'd*, 967 F.2d 410 (10th Cir. 1992) ("[T]he defendants' business depends upon their ability to induce the plaintiff's customers to breach their contractual obligations while the plaintiff continues to perform."). As a result, it is not necessary for Take-Two to allege an "independently wrongful" act.

## IV.    CONCLUSION

For the reasons set forth above, PlayerAuctions' motion should be denied in its entirety. To the extent the Court should decide otherwise with respect to any claim, Take-Two respectfully submits that dismissal should be entered without prejudice, and with leave to amend. *Manzarek*, 519 F.3d at 1031.

DATED: May 12, 2025

KARIN G. PAGNANELLI
MARC E. MAYER
JAMES D. BERKLEY
CONSTANCE C. KANG
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Karin G. Pagnanelli*
Karin G. Pagnanelli (SBN 174763)
Marc E. Mayer (SBN 190969)
James D. Berkley (SBN 347919)
Constance C. Kang (SBN 341622)
Attorneys for Plaintiff Take-Two
Interactive Software, Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Take-Two Interactive Software, Inc., certifies that this brief contains 6,607 words, which:

☑ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order.

Dated: May 12, 2025                    /s/ *Karin G. Pagnanelli*
                                       Karin G. Pagnanelli

Mitchell
Silberberg &
Knupp LLP

20721274.1

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**