**DYKEMA GOSSETT LLP**
Brian H. Newman (SBN 205373)
*bnewman@dykema.com*
444 S. Flower Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

**DYKEMA GOSSETT PLLC**
Michael J. Word (*pro hac vice*)
*MWord@dykema.com*
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155

J. Daniel Harkins (*pro hac vice*)
*dharkins@dykema.com*
Ryan D. Borelo (*pro hac vice*)
*rborelo@dykema.com*
112 East Pecan Street, Suite 1800
San Antonio, TX 78205
Telephone: (210) 554-5500
Facsimile: (866) 219-7593

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> PLAYERAUCTIONS, INC., a company organized under the laws of Delaware; IMI EXCHANGE LLC, a company organized under the laws of Delaware; PAIAO NETWORK TECHNOLOGY (SHANGHAI) CO., LTD. (拍奥网络科技（上海）有限公 司), a/k/a PLAYERAUCTIONS (SH) CO. LTD., a company organized under the laws of China; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:25-cv-01880 ODW (JDE) <br><br> **DEFENDANTS PLAYERAUCTIONS, INC. AND IMI EXCHANGE LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** <br><br> Date: June 2, 2025 <br> Time: 1:30 p.m. <br> Ctrm: 5D |

# **TABLE OF CONTENTS**

**Page**

I. DEFENDANTS' REPLY ............................................................................. 5

II. ARGUMENT ................................................................................................ 5

    A. There Can Be no Copyright Infringement of *Grand Theft Auto Online* Itself Because It Admittedly Has Not Been Registered .............. 5

    B. Plaintiff's Direct Infringement Claims Remain Fatally Deficient .......... 7

        1. Even With Plaintiff's "Clarification" the Complaint Fails to Specify the Potentially Infringing Copyrighted Elements ........................................................................................ 7

        2. Volitional Conduct Directed to the "Infringing Images" is not Pleaded in the Complaint ...................................................... 7

    C. Plaintiff's "Narrowed" Indirect Copyright Infringement Claims Still Fail As A Matter Of Law ................................................................ 9

    D. Plaintiff Has Not Met Its Burden To Rebut Nominative Use ............... 12

    E. Plaintiff Wrongly Attempts to Treat Its At-Will Terms of Service As Exempt From The "Wrongful Act Requirement" ........................... 14

III. CONCLUSION ........................................................................................... 15

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CA 90071

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Airlines, Inc. v. Platinum World Travel*,
  769 F. Supp. 1203 (D. Utah 1990) .................................................................. 14

*Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*,
  821 F.3d 297 (2d Cir. 2016) ........................................................................... 10

*Blackstone Int'l, Ltd. v. E2 Ltd.*,
  2022 U.S. Dist. LEXIS 197717 (W.D. Wash. Oct. 31, 2022) .......................... 8

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
  716 F. Supp. 3d 835 (C.D. Cal. 2024) ............................................................. 8

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ................................................................. 12, 13

*Graham v. James*,
  144 F.3d 229 (2d Cir. 1998) ........................................................................... 10

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  470 P.3d 571 (2020) ................................................................................. 14, 15

*Lasica v. Am. Online, Inc.*,
  No. CV 14-4230-GW(FFMx), 2015 WL 12791494 (C.D. Cal. Oct. 8, 2015) . 11

*Mattel Inc. v. Walking Mountain Prods.*,
  353 F. 3d 792 (9th Cir. 2003) .................................................................. 12, 13

*Md. Jockey Club v. ODS Techs., L.P.*,
  No. CIV. WMN-03-2124, 2005 WL 1200181 (D. Md. May 20, 2005) .......... 14

*MDY Inds., LLC v. Blizzard Ent., Inc.*,
  629 F.3d 928 (9th Cir. 2010) .................................................................... 10, 11

*Nadav v. Beardwood & Co. LLC*,
  17 Civ. 6465 (AKH), 2018 U.S. Dist. LEXIS 10451 (S.D.N.Y. Jan. 17, 2018).. 11

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ........................................................................... 12

*PaySys Int'l, Inc. v. Atos Se*,
  226 F. Supp. 3d 206 (S.D.N.Y. 2016) ............................................................ 11

*Perfect 10 v. Google, Inc.*,
  416 F. Supp. 2d 828 (C.D. Cal. 2006) .............................................................. 8

*Reis, Inc. v. Spring11 LLC*,
  No. 15 Civ. 2836, 2016 U.S. Dist. LEXIS 131486 (S.D.N.Y. Sept. 26, 2016) .. 9

*Roblox Corp. v. PlayerAuctions Inc.*,
  No. 3:25-cv-01139-MMC (N.D. Cal. May 13, 2025), ECF No. 38 .................. 14

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CA 90071

3
DEFENDANTS PLAYERAUCTIONS, INC. AND IMI EXCHANGE LLC'S
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

*S.O.S. Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) ...................................................................... 9, 10

*SA Music, LLC v. Amazon.com, Inc.*,
  No. 2:20-cv-00105-BAT, 2020 U.S. Dist. LEXIS 103373 (W.D. Wash. June 12, 2020) .............................................................................................................. 8

*Tetra Tech. EC, Inc. v. CH2M Hill Inc.*,
  No. 20-cv-04704-JD, 2024 U.S. Dist. LEXIS 221456 (N.D. Cal. Dec. 6, 2024) .......................................................................................................... 15

*Thumbtack, Inc. v. Liaison, Inc.*,
  No. 23-cv-02830, 2024 U.S. Dist. LEXIS 11022 (N.D. Cal. Jan. 22, 2024) ...... 7

*Toyota Motor Sales, USA, Inc. v. Tabari*,
  610 F. 3d 1171 (9th Cir. 2010) .................................................................. 12, 13

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ............................................................................ 8

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
  354 F.3d 112 (2d Cir. 2003) ............................................................................. 6

**Other Authorities**

2 Melville B. Nimmer and David Nimmer, Nimmer on Copyright
  § 7.16[B][5][b] (2022 ed.) ........................................................................... 6, 7

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CA 90071

4

DEFENDANTS PLAYERAUCTIONS, INC. AND IMI EXCHANGE LLC'S
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

## I. DEFENDANTS' REPLY

Instead of standing on its Complaint, Plaintiff attempts to use its brief to "rehabilitate" its pleading by offering up arguments, claims, and legal theories that find no clear basis in its Complaint. Plaintiff's efforts at rehabilitation are not only insufficient, they somehow make things worse. Instead of clarifying its vague allegations regarding direct infringement, Plaintiff manages the opposite and injects more ambiguity. Instead of correcting misleading statements from its Complaint—such as those regarding Defendant's disclaimer—it doubles-down on them. Instead of clearly articulating the legal reasoning for its claims, Plaintiff offers up convoluted arguments and novel legal theories that find no support in case law. All of this is done under the veneer of bombastic language. Ultimately, the claims in Plaintiff's Complaint cannot be rehabilitated because they are fundamentally flawed and lack support. For these reasons, dismissal without leave to amend is warranted.

## II. ARGUMENT

### A. There Can Be no Copyright Infringement of *Grand Theft Auto Online* Itself Because It Admittedly Has Not Been Registered

Plaintiff concedes Grand Theft Auto Online ("GTA Online") itself has not been registered. Instead, Plaintiff maintains that GTA Online is a "mode" or "component" of GTA V and cites to packaging for that game. (Opp. at 11-12.) Even if accepted as true, these allegations do not show registration of GTA Online itself. In fact, the packaging for GTA V ("featuring *Grand Theft Auto Online*") only emphasizes that they are separate works. (*See* Mot. at 19.) Moreover, Plaintiff's allegations that GTA Online is simply a "mode" or "component" of GTA V are directly contradicted by the fact that Plaintiff sells GTA V and GTA Online as *separate games*:



(Req. for Judicial Notice, Ex. [3].)

Given a clear lack of registration, Plaintiff invents a new argument (which has no basis in its Complaint) that GTA Online need not be registered because it is a "derivative work" of GTA V.  (Opp. at 12.)  But the same treatise that Plaintiff cites in its brief shows that this argument is invalid and that registration of GTA Online is a *necessary prerequisite* if Plaintiff seeks to claim infringement of GTA Online itself.  2 Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT § 7.16[B][5][b] (2022 ed.) (where a copyright owner seeks to bring suit for infringement of an unregistered derivative work *per se* "the need remains for it to be registered belatedly.").  In the absence of such registration, Plaintiff cannot claim infringement based on any elements unique to GTA Online itself.  *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 116 (2d Cir. 2003) (copyright claim based on unregistered derivative work cannot be maintained where the "only copied expressive elements" were of unregistered derivative work and were not found in registered work).  Instead, any copyright claim is limited to infringement of any elements found in any *underlying* registered work, which Plaintiff contends is GTA

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

V. (Opp. at 12 (citing николайNIMMER, § 7.16[B][5][b].).

Because Plaintiff has failed to show registration of GTA Online, its copyright claims are limited to GTA V itself. Any claims of direct and indirect copyright infringement based on GTA Online *per se* (and any elements specific to that work) must be dismissed.

### B. Plaintiff's Direct Infringement Claims Remain Fatally Deficient

#### 1. *Even With Plaintiff's "Clarification" the Complaint Fails to Specify the Potentially Infringing Copyrighted Elements*

Plaintiff concedes that its direct infringement claims rely on distribution of allegedly "infringing images of gameplay generated from 'modded' versions of GTA V." (Opp. at 13-14.) In an effort to clarify its vague allegation, Plaintiff makes it worse by claiming it intended to allege infringement based on "***all*** images of GTA V." (*Id.* at 14.) Even if Plaintiff could amend its Complaint via its Opposition (which it cannot), it would only result in allegations more similar to those that have been found impermissibly vague and warranting dismissal, like *Thumbtack, Inc. v. Liaison, Inc.*, No. 23-cv-02830, 2024 U.S. Dist. LEXIS 11022, at *6 (N.D. Cal. Jan. 22, 2024). The cases Plaintiff cites only highlight the deficiencies in the Complaint because in each of those cases the plaintiff identified the infringing works with specificity. (*See* Req. for Judicial Notice, Exs. 5, 6, 7.) Plaintiff's failure to identify a single image on the PlayerAuctions Website stands in stark contrast to these cases.

Plaintiff's deficient pleading is not harmless. By failing to identify any actual images, Plaintiff prevents any inquiry into whether the alleged images actually exist, or whether they depict "copyrighted elements" of GTA V versus unprotected elements (such as elements specific to the admittedly unregistered GTA Online). Therefore, Plaintiff's failure to plead the requisite specificity for its direct copyright infringement claim warrants dismissal.

#### 2. *Volitional Conduct Directed to the "Infringing Images" is not*

*Pleaded in the Complaint.*

Plaintiff concedes that Defendants do not select any material for upload, download, transmission, or storage. (Opp. at 15.) Instead, Plaintiff argues it may show volitional conduct where a listing platform allegedly "exercises control" over its marketplace or "instigates" users' "copying, storage, or distribution." (*Id.*) Plaintiff's argument still fails because any alleged "control" or "instigation" must relate to the allegedly "infringing images" themselves, not to the listings generally.

Again, the only direct infringement plausibly alleged by Plaintiff is the distribution of allegedly "infringing images," because that is the only "unauthorized content" that is actually transmitted via the PlayerAuctions Website. *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 844 (C.D. Cal. 2006) ("In the internet context, an actual dissemination means the transfer of a file from one computer to another."); *see also SA Music, LLC v. Amazon.com, Inc.*, No. 2:20-cv-00105-BAT, 2020 U.S. Dist. LEXIS 103373, at *19 (W.D. Wash. June 12, 2020) (same). Therefore, to satisfy volitional conduct Plaintiff *must* show conduct of control, selection, or instigation, directly related to the allegedly "infringing images" on the PlayerAuctions Website. *BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 716 F. Supp. 3d 835, 842 (C.D. Cal. 2024) ("In other words, '*direct* liability must be premised on conduct that can reasonably be described as the *direct cause* of the infringement.'") (citing *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019)). Plaintiff makes no such showing. Instead, Plaintiff's allegations (offering the marketplace generally, providing tutorials, promoting sellers, preventing fraudulent transactions) are directed to general operation of its marketplace. (Opp. at 16.) The sole case that Plaintiff cites for support, *Blackstone Int'l, Ltd. v. E2 Ltd.*, is readily distinguishable because it did not involve an online marketplace or listing platform in which users select and upload content. 2022 U.S. Dist. LEXIS 197717, at **2, 25-26 (W.D. Wash. Oct. 31, 2022).

Because Plaintiff fails to allege that Defendants engaged in volitional conduct

relating to the allegedly "infringing images" themselves, its direct copyright claim must be dismissed.

### C. Plaintiff's "Narrowed" Indirect Copyright Infringement Claims Still Fail As A Matter Of Law

To prop up its deficient indirect infringement claims, Plaintiff engages in a "kitchen sink" approach. Plaintiff first argues the distinction between "conditions" and "covenants" is irrelevant because it has alleged that the relevant terms are conditions. (Opp. at 17-19.) But Plaintiff's characterization of terms as "conditions" is not dispositive and such allegations need not be accepted as true when the actual terms of the TOS are before the Court. Moreover, Plaintiff's argument is directly contradicted by cases dismissing claims for copyright infringement notwithstanding a plaintiff's attempt to characterize terms as "conditions." *See*, *e.g.*, *Reis, Inc. v. Spring11 LLC*, No. 15 Civ. 2836, 2016 U.S. Dist. LEXIS 131486, at *17 (S.D.N.Y. Sept. 26, 2016) (dismissing copyright infringement claims despite conclusory allegation that Terms of Service were a "condition").

Plaintiff next argues that Sections 2.2. and 2.3 set out the scope of its license to users and that (1) under *S.O.S. Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989), any conduct outside of this license is necessarily infringement, and (2) the language in these terms track the "linguistic conventions of condition." (Opp. at 19-20.) Plaintiff's argument is fundamentally flawed on both points.

First, *S.O.S.* does not hold that any conduct outside the scope of a license is necessarily copyright infringement, as Plaintiff contends. To the contrary, the court in *S.O.S.* explicitly recognized that conduct outside the scope of the license may not result in infringement. 886 F.2d at 1089 ("Whether these acts, unshielded by any license, infringed S.O.S.'s copyright will be a matter for the district court to determine on remand.") More importantly, *S.O.S.* does not obviate the need to distinguish between covenants and conditions to determine whether an action lies

for copyright infringement. In *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, the Ninth Circuit explicitly referenced the same holding in *S.O.S.* that Plaintiff relies upon, but nevertheless proceeded with its analysis of contractual covenants versus license conditions. 629 F.3d 928, 939 (9th Cir. 2010).

Second, Plaintiff does not identify in these sections the "unmistakable language" necessary to overcome the presumption under New York law that the cited terms of the TOS are conditions. Plaintiff cites in Section 2.2 language that the license is granted "[s]ubject to the terms of this Agreement." (Opp. at 19.) But reading a condition into this broad language would result in allowing a copyright holder to "designate any disfavored conduct during software use as copyright infringement," which the Ninth Circuit explicitly rejected in *MDY Industries*. 629 F.3d at 941. Plaintiff also cites the "Restrictions" of Section 2.3, but this language does not condition the grant of the license to the user at all. (Opp. at 19-20.) Instead, Section 2.3 opens by explicitly recognizing that the license *has already been granted to the user* ("The limited license granted in this Agreement . . .") and then goes on to delineate "acceptable" and "unacceptable" behavior under that license. (*Id.*). Thus, none of the "core language of the TOS" expresses any conditions in "unmistakable language." *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (internal quotation marks omitted).

Plaintiff also does not show how Sections 2.2 or 2.3—or any other terms of its TOS—could be considered conditions given that "contract obligations that are to be performed after partial performance by the other party are not treated as conditions." *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998). As Plaintiff admits in its Complaint, outside of use on a personal computer, its TOS are only presented to the user when they are logging into GTA Online (*i.e.*, *after* they have already purchased its games). (Cmplt, ¶ 22.) To paraphrase the finding of another district court, "[Sections 2.2 and 2.3] apply only after someone purchases and

10

DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

downloads [GTA V], which bar[s] any argument that [they are] condition[s] precedent." *Nadav v. Beardwood & Co. LLC*, 17 Civ. 6465 (AKH), 2018 U.S. Dist. LEXIS 10451, at *4-9 (S.D.N.Y. Jan. 17, 2018) (citing *PaySys Int'l, Inc. v. Atos Se*, 226 F. Supp. 3d 206, 226 (S.D.N.Y. 2016)).

In its last effort, Plaintiff attempts to narrow its indirect infringement claims to two grounds: alleged unauthorized modification of its software and commercial use. (Opp. at 20.) But neither ground is sufficient. First, Plaintiff's vague "commercial use" argument is not articulated in its Complaint. But even if it were, this argument cannot support a copyright infringement claim because "commercial use" is not grounded in any of the exclusive rights of copyright. *MDY*, 629 F.3d at 940-41; *Nadav*, 2018 U.S. Dist. LEXIS 10451 at *8-9 (rejecting copyright infringement argument based on "commercial exploitation . . . outside the scope of the noncommercial license").[1] Second, Plaintiff's argument based on alleged "unauthorized modification" fails for the reason that its underlying basis—that the accused listings are "only possible by hacking and modifying the GTA V game in breach of the Rockstar TOS" (Cmplt, ¶ 33)—is implausible because it is directly contradicted by Plaintiff's own allegations in the Complaint. As Plaintiff itself concedes, the various accused listings do not necessarily require "hacking" or "modifying" its source code; instead, they can be accomplished via behavior that involves nothing more than using GTA's own software in ways it deems "unacceptable", such as using cheats, exploits, glitches, and the like. (Cmplt, ¶¶ 2, 3, 32, 71, 72.)

Because Plaintiff has not rebutted the presumption that the terms of its TOS are covenants, and has not otherwise set forth a plausible basis for its indirect copyright infringement claims, these claims must be dismissed.

---

[1] The sole case that Plaintiff relies upon for its "commercial use" argument is distinguishable because it involved California, not New York law, and both parties agreed the relevant provision was a "condition." *Lasica v. Am. Online, Inc.*, No. CV 14-4230-GW(FFMx), 2015 WL 12791494, at *3 (C.D. Cal. Oct. 8, 2015).

### D. Plaintiff Has Not Met Its Burden To Rebut Nominative Use

Plaintiff does not dispute that its two trademark-related claims may be considered together on dismissal. Plaintiff further concedes that the alleged use of its marks is limited to describing Plaintiff's own product, and that nominative use applies. In light of this concession, Plaintiff bears the burden of showing that the use of the mark is *not* nominative use under the three-part *New Kids* test. *Toyota Motor Sales, USA, Inc. v. Tabari*, 610 F. 3d 1171, 1182 (9th Cir. 2010); *see New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308-09 (9th Cir. 1992) (reciting factors).

Plaintiff first argues that "nominative use" is limited to "purposes of comparison or criticism." (Opp. at 22.) But the two cases Plaintiff cites disprove this argument. *Toyota Motor Sales*, 610 F.3d at 1176-77 (nominative use found when defendant used mark as a point of reference, not for comparison or criticism); *New Kids on the Block*, 971 F.2d at 306 (same).

Turning to the *New Kids* test, Plaintiff does not address the first element at all and concedes that its games cannot be identified without using the "GTA" marks themselves.

On the second element, Plaintiff refers to its sole allegation in the Complaint and declares that the alleged use "far exceeds what is necessary," without further explanation. (Opp. at 23.) This is not sufficient. As the Ninth Circuit recognized in *Cairns v. Franklin Mint Co.*, "[w]hat is 'reasonably necessary to identify the plaintiff's product differs from case to case." 292 F.3d 1139, 1154 (9th Cir. 2002). Here, Plaintiff concedes that the PlayerAuctions GTA Marketplace and related listings necessarily depend on the GTA V game. (*See*, *e.g.*, Opp. at 23 (marketplace is "based off GTA V").). "Where identification of the defendant's product depends on the description of the plaintiff's product, more use of the plaintiff's trademark or trade dress is reasonably necessary." *Mattel Inc. v. Walking Mountain Prods.*, 353 F. 3d 792, 811 (9th Cir. 2003) (cleaned up) (citing *Cairns*, 292 F.3d at 1154).

Plaintiff does not even attempt to show how Defendants could reasonably identify the marketplace for GTA and its related listings, or advertise for these items and services, without using GTA itself.

On the third element, Plaintiff does not address that it misleadingly cropped the PlayerAuctions Website to omit a key disclaimer. Instead, Plaintiff doubles down on its deception by falsely claiming the disclaimer is "at the bottom of its Website" and "far below the listings." (Opp. at 24.) This is demonstrably false. The disclaimer is displayed prominently near the top of the Website, immediately below the three categories of listings on the marketplace. (Defs. Ex. 4.) Plaintiff's labeling of the disclaimer as "obscure" or "inconspicuous" does not diminish its significance, and is insufficient to carry its burden of showing no nominative use. As the Ninth Circuit has recognized, the third element "does not require that the defendant make an affirmative statement that their product is not sponsored by the plaintiff." *Mattel Inc.*, 353 F. 3d at 811. The fact that PlayerAuctions has an affirmative, conspicuous statement disclaimer is dispositive on this third element.

Last, Plaintiff's allegation concerning the advertisement for "Legit GTA Accounts" reads too much into "legit" and is insufficient to show sponsorship and endorsement. First, Plaintiff does not dispute that it failed to provide the requisite "context" for this advertisement. (Mot. at 22 (citing cases)). Second, the term "legit" is similar to other terms that have been found as insufficient to show sponsorship or endorsement, like "authentic." *Cairns*, 292 F.3d at 1155. Third, the fact that this is an online advertisement strips it of any probative value, especially given that the PlayerAuctions Website contains a clear disclaimer disavowing any sponsorship or endorsement. As the Ninth Circuit recognized, in the internet context, consumers "fully expect to find some sites that aren't what they imagine based on a . . . search engine summary," and "consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page — if then." *Toyota Motor Sales*, 610 F.3d at 1179.

Rather than meeting Plaintiff's burden of *disproving* nominative use, the Complaint's allegations prove each and every element. Therefore Plaintiff's trademark and unfair competition claims should be dismissed.[2]

### E. Plaintiff Wrongly Attempts to Treat Its At-Will Terms of Service As Exempt From The "Wrongful Act Requirement"

The California Supreme Court unambiguously held in *Ixchel Pharma, LLC v. Biogen, Inc.* "that to state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act." 470 P.3d 571, 580 (2020). Plaintiff does not dispute that its TOS is an at-will contract, and therefore it needed to allege an "independently wrongful act." Plaintiff did not do so on the mistaken belief that it was "not necessary." (Opp. at 28.) Because Plaintiff did not allege an independently wrongful act, its claim for intentional interference for its at-will TOS must be dismissed.

Plaintiff attempts to distinguish the California Supreme Court's holding in *Ixchel* on the basis of an imagined distinction between "permissible ***termination*** and improper ***breach***," (Opp. at 27 (emphasis in original)). Plaintiff's novel theory finds absolutely no support in case law. Plaintiff does not cite a single case that limits *Ixchel* in this manner—in fact, none of the cases cited by Plaintiff refers to *Ixchel* at all because they all pre-date that case. (Opp. at 25-28 (citing only cases from 2019 or earlier)).) Two of the cases do not even address California state law. (Opp. at 27 (citing *Md. Jockey Club v. ODS Techs., L.P.*, No. CIV. WMN-03-2124, 2005 WL 1200181, at *9 (D. Md. May 20, 2005); and *Am. Airlines, Inc. v. Platinum World Travel*, 769 F. Supp. 1203, 1206 (D. Utah 1990).)

Plaintiff's novel, unsupported argument attempts to obviate the "independent wrongfulness requirement" of *Ixchel* and to claim breach of the at-will TOS *itself* as

---

[2] A district court recently found nominative use by PlayerAuctions concerning another third-party videogame maker's trademark. *See Roblox Corp. v. PlayerAuctions Inc.*, No. 3:25-cv-01139-MMC (N.D. Cal. May 13, 2025), ECF No. 38, at 2-3.

the "improper act." (Opp. at 26.) While this may be sufficient for a typical contract *Ixchel* explains at great length that an "at will" contract is correctly treated similar to a prospective economic relationship for which interference requires pleading of an "independently wrongful act." 470 P.3d at 579-80. This wrongful act must be *independent* of the alleged breach—that is, "wrongful by some legal measure other than the fact of interference itself." *Id.* at 576; *see also Tetra Tech. EC, Inc. v. CH2M Hill Inc.*, No. 20-cv-04704-JD, 2024 U.S. Dist. LEXIS 221456, *6-7 (N.D. Cal. Dec. 6, 2024) (claimant "must show that defendants engaged in an 'independently wrongful act' above and beyond the ostensible disruption of the contract.")

Because the Complaint admittedly fails to plead any *independently* wrongful conduct, Plaintiff's tortious interference claim fails and must be dismissed.

## III. CONCLUSION

For the reasons above, Defendants respectfully request that the Court grant its motion and dismiss with prejudice all claims in Plaintiff's Complaint.

Dated: May 19, 2025                                  DYKEMA GOSSETT LLP

                                                     By: */s/ Brian H. Newman*
                                                         Brian H. Newman
                                                         Attorney for Defendants
                                                         PlayerAuctions, Inc. and IMI
                                                         Exchange LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for **DEFENDANTS PLAYERAUCTIONS, INC. and IMI EXCHANGE LLC**, certifies that this brief contains 3296 words, which:

<u>X</u>   complies with the word limit of L.R. 11-6.1.


Dated:    May 19, 2025            */s/ Brian H. Newman*
                                  Brian H. Newman
                                  Attorney for Defendants
                                  PlayerAuctions, Inc. and IMI Exchange LLC