O

# United States District Court
# Central District of California

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> PLAYERAUCTIONS, INC. et al., <br><br> Defendants. | Case № 2:25-cv-01880-ODW (JDEx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [20]** |

## I.  INTRODUCTION

Plaintiff Take-Two Interactive Software, Inc. ("Take-Two") brings this copyright infringement, trademark infringement, and interference with contractual relations action against Defendants PlayerAuctions, Inc. ("PlayerAuctions"), IMI Exchange LLC ("IMI"), and Paiao Network Technology (Shanghai) Co., Ltd ("Paiao"). (Compl., ECF No. 1.)  PlayerAuctions and IMI (collectively, "Defendants") move to dismiss Take-Two's claims under Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(6).  (Mot. Dismiss ("Motion" or "MTD"), ECF No. 20.)  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

Take-Two is the publisher and copyright owner of the popular action-adventure video game series *Grand Theft Auto* ("GTA"), developed by Take-Two's subsidiary Rockstar Games ("Rockstar"). (Compl. ¶ 1.) The latest game in the series is *Grand Theft Auto V* ("GTA V"), which has a multiplayer component *Grand Theft Auto Online* ("GTA Online"). (*Id.* ¶¶ 1, 18.) The game's fictional world allows players to unlock new features as they progress to higher levels, including virtual money, assets, and "reputation points" (collectively, "In-Game Assets"). (*Id.* ¶ 19.) PlayerAuctions operates an online marketplace where users can sell player accounts with enhanced In-Game Assets. (*Id.* ¶ 2.) Take-Two alleges that these sale listings are unauthorized and infringe GTA V content. (*Id.*)

On March 4, 2025, Take-Two filed this action against PlayerAuctions, IMI, and Paiao as entities with unified interest and ownership. (*Id.* ¶ 12.) Take-Two asserts seven causes of action against them, for: (1) copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101; (2) contributory copyright infringement; (3) vicarious copyright infringement; (4) inducement of copyright infringement; (5) trademark infringement under 15 U.S.C. § 1114[3]; (6) false designation of origin under 15 U.S.C. § 1125(a); and (7) intentional interference with contractual relations. (*Id.* ¶¶ 46–97.)

Defendants now move to dismiss pursuant to Rule 12(b)(6). (Mot. 9–10.) The Motion is fully briefed. (*See* Opp'n, ECF No. 22; Reply, ECF No. 25.)

---

[2] All factual references derive from Take-Two's Complaint or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Take-Two cites 15 U.S.C. § 1125(a)(1) for its trademark infringement cause of action. (*See* Compl. 19.) The Court understands this citation to be a typographical error, as Take-Two relies on the correct provision, 15 U.S.C. § 1114, in the substance of its cause of action. (Compl. ¶ 82.)

### III. INCORPORATION BY REFERENCE

In support of their Motion, Defendants request that the Court incorporate a certain website screenshot into the Complaint by reference. (Req. Incorp. ¶ 2, Ex. 2, ECF No. 20-1; Notice Filing Correct Ex., ECF No. 21.)[4]

Courts considering a Rule 12(b)(6) motion to dismiss are generally limited to information contained in the complaint. *Lee v. City of Los Angeles.*, 250 F.3d 668, 688 (9th Cir. 2001). However, courts may, through judicial notice and incorporation by reference, consider information outside of the complaint "without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). This "prevents plaintiffs from selecting only portions of documents that support their claims," while omitting portions that weaken them. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Incorporation by reference is proper if "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). In the Complaint, Take-Two references a cropped screenshot of PlayerAuctions's website and alleges that PlayerAuctions intentionally and falsely implies that PlayerAuctions is associated with Take-Two. (Compl. ¶ 44.) Defendants argue that Take-Two's cropping of the screenshot misleadingly obscures surrounding content, including Defendants' disclaimer that "PlayerAuctions is NOT endorsed . . . or sponsored by GTA 5 Online or its trademark owner." (MTD 22–23.) Because Take-Two alleges the website falsely implies endorsement, (Compl. ¶ 44), while the disclaimer denies any affiliation, (MTD 23), Take-Two's trademark infringement claim depends on the complete website image. Defendants attached the

---

[4] Additionally, both sides submit requests for judicial notice. (Pl.'s Req. Judicial Notice ISO Opp'n, ECF No. 23; Defs.' Req. Judicial Notice ISO Reply, ECF No. 25-1.) As the Court reaches its conclusions without relying on these documents, it denies those requests. *See Migliori v. Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001, 1003 n.1 (C.D. Cal. 2000) (declining to take judicial notice of exhibits that "do not affect the outcome of" the motion).

screenshot to their motion to dismiss, (MTD 23; Req. Incorp. Ex. 2), and Take-Two does not dispute the screenshot's authenticity, (*see generally* Opp'n). Therefore, the Court finds it appropriate to consider Defendants' complete website image as incorporated by reference into the Complaint.

### IV.     LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly

cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## V. DISCUSSION

Take-Two owns four copyrights and six trademarks "pertaining to GTA V." It alleges all causes of action against Defendants based on infringement of both GTA V and GTA Online. (Compl. ¶¶ 17–28.) Defendants argue the Court should dismiss the copyright infringement causes of action that are based on GTA Online because, although Take-Two alleges it owns copyrights for GTA V, it does not allege that it owns the copyrights for GTA Online. (MTD 18–19.) Defendants further argue the Court should dismiss all causes of action as insufficiently pleaded. (*Id.* at 9.)

### A. Copyright Registration for GTA Online

Defendants move to dismiss Take-Two's copyright infringement causes of action to the extent they are premised on infringement of GTA Online. (MTD 18–19.) While Defendants do not dispute that Take-Two owns the copyrights for GTA V, they argue that GTA V and GTA Online are two separate games requiring separate copyrights. (*Id.*) Therefore, Defendants argue, because Take-Two is "silent about any registrations in GTA Online," the Court must dismiss Take-Two's copyright infringement claims that are premised on GTA Online. (*Id.*) In opposition, Take-Two argues that GTA Online is not a separate game but rather simply a "multiplayer mode for GTA V." (Opp'n 8, 11–12.) It contends that, even if treated as a separate game, GTA Online is a "derivative work of GTA V," and encompassed within its registration. (*Id.*)

To state a copyright infringement claim, a plaintiff must first show copyright ownership. *DC Comics v. Towle*, 802 F.3d 1012, 1018 (9th Cir. 2015). A copyright owner has the right to "prepare derivative works" based on the original copyrighted work. *Id.* at 1023. "A derivative work is a work based upon one or more preexisting works that recasts, transforms, or adapts the preexisting work." *Id.* (internal quotation

marks omitted). When an unauthorized party copies a derivative work, "the copyright owner of the underlying work can sue for infringement." *Id.*

Where "plaintiffs have adequately pled they own a copyright in a[t] least some of the work," courts are "hesitant to dismiss complaints based on ownership." *Klauber Bros., Inc. v. City Chic Collective Ltd.*, No. 2:22-cv-01743-MWF (MRWx), 2022 WL 17184799, at *4 (C.D. Cal. Aug. 26, 2022); *see also McGucken v. Chive Media Grp., LLC*, No. 2:18-cv-01612-RSWL (KSx), 2018 WL 3410095, at *2 (C.D. Cal. July 11, 2018) (finding ownership sufficiently pleaded where "[p]laintiff included five separate copyright registrations . . . thus evidencing that [p]laintiff has in fact registered at least some of the Subject Photographs.").

Here, Take-Two establishes ownership of four copyrights, registered as GTA V, GTA V "(for PC)," GTA V "(for PS4)," and GTA V "(for Xbox One)" (collectively, "GTA Copyrights"). (Compl. ¶ 27, Ex. B, ECF No. 1-1.) Take-Two asserts that GTA Online "utilize[es] GTA V's artwork, character models, in-game assets, and underlying software code." (Opp'n 12.) For the purpose of this Motion, it is not necessary to determine whether GTA Online and GTA V are the same game or whether GTA Online is a derivative of GTA V. It is sufficient that Take-Two properly registered "at least some" of the subjects in dispute with the U.S. Copyright Office. *See McGucken,* 2018 WL 3410095, at *2. Therefore, Take-Two may assert infringement claims premised on both GTA V and GTA Online and Defendants' motion to dismiss on this basis is denied.

**B.    Direct Copyright Infringement (Count 1)**

In its first cause of action, Take-Two asserts that Defendants directly infringe Take-Two's GTA V copyrights by, among other things, "host[ing] infringing images of gameplay" on Defendants' online marketplace. (Compl. ¶¶ 42, 46–52.) Defendants argue this claim fails because Take-Two's reference to "host[ing] infringing images" is too vague and Take-Two does not allege any "volitional conduct" by Defendants. (MTD 11–13.)

### 1. *Sufficiency of Allegations*

To state a direct copyright infringement claim, the plaintiff must show that it owns the copyright, and that the defendant violated at least one of plaintiff's exclusive rights as a copyright holder. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). Additionally, "direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Id.* Where a plaintiff's claim is premised on unauthorized copying, a plaintiff is not required to "allege the exact content that [d]efendants are suspected of copying." *Famous Birthdays, LLC v. SocialEdge, Inc.*, No. 2:21-cv-09562-PA (MRWx), 2022 WL 1591723, at *4 (C.D. Cal. Apr. 15, 2022). Rather, a plaintiff must only allege facts about the subject and location of the infringement. *Id.*

Here, Defendants do not dispute Take-Two's copyright ownership of GTA V. (*See generally* MTD.) Take-Two asserts that Defendants infringe on Take-Two's GTA V copyrights "by reproducing, distributing, and publicly displaying, and by knowingly authorizing others to reproduce, distribute, publicly display, copyrighted elements of GTA V" on Defendants' online marketplace. (Compl. ¶¶ 2, 48.) It supports this assertion with allegations that Defendants "actively monitor[], control[], and supervise[]" the "thousands of listings for unauthorized, infringing GTA V content," and "infringing images of gameplay generated from 'Modded' versions of GTA V." (*Id.* ¶¶ 2, 42.) By alleging the infringement location—the online marketplace—and the infringing content—GTA V images—Take-Two sufficiently alleges that PlayerAuctions directly infringed its copyrighted content. *See Famous Birthdays*, 2022 WL 1591723, at *4 (finding infringement claim survived Rule 12(b)(6) dismissal motion where plaintiff alleged "non-speculative facts about where the infringing conduct can be found" and "what [d]efendants infringed").

Nevertheless, Defendants argue that Take-Two fails to sufficiently allege it copied Take-Two's copyrighted material because the only allegation on this element—that PlayerAuctions hosts "infringing images" on its website—is too vague to put

Defendants on notice under Rule 8(a)(2). (MTD 12 (quoting Compl. ¶ 42).) The Court disagrees. Take-Two sufficiently alleges that *all* GTA V content found on PlayerAuctions's website infringes its copyrights, because all that content constitutes unauthorized copying. (*See* Compl. ¶¶ 2, 29, 42, 48.) Therefore, Take-Two's allegations properly put Defendants on notice and plausibly allege that Defendants caused infringement of Take-Two's copyrighted material.

    *2.     Volitional Conduct Requirement*

Defendants also contend that Take-Two's direct infringement claim fails as a matter of law because Take-Two does not establish that Defendants caused the alleged infringement through Defendants' "volitional conduct." (MTD 12–13.)

The causation element is also referred to as "volitional conduct." *Perfect 10*, 847 F.3d at 666. It is critical in cases where "a direct-infringement claim is lodged against a defendant who does nothing more than operate an automated, user-controlled system." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731–32 (9th Cir. 2019). Usually, the question in such circumstances is "who selects the copyrighted content: the defendant or its customers." *Id.* at 732. When the customer is responsible for selecting the content, a plaintiff must establish a website owner's "volitional conduct" through "actual infringing conduct with a nexus sufficiently close and causal to the illegal copying." *Id.* A plaintiff can do this by showing that the defendant "exercised control (other than by general operation of a [website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution" of the copyrighted content. *Perfect 10*, 847 F.3d at 670.

Here, Take-Two alleges that PlayerAuctions uses infringing content to promote its website, "incentiviz[ing] sellers to create and sell Modded Accounts by offering a tool called an 'Account Calculator,' which allows users to 'Check how much your Grand Theft Auto V Account is worth.'" (Compl. ¶ 37.) Take-Two describes "Modded Accounts" as "player accounts that have been manipulated using software that hacks Take-Two's copyrighted source code without authorization" to enhance the account's

In-Game Assets.  (*Id*. ¶ 30.)  Take-Two alleges that PlayerAuctions "advertises 'Modded GTA 5 accounts [that] contain anything and everything buyers want.'" (*Id*.)  Additionally, Take-Two asserts that PlayerAuctions provides infrastructure, video tutorials, and "detailed instructions for buying and selling Modded Accounts," promising sellers "'tools and services' that make it easy for them to 'manage, promote, and grow [their] business.'"  (*Id*. ¶ 35 (alteration in original).)  Take-Two alleges that "PlayerAuctions is aware" that the majority of GTA V accounts sold on its platform are modified.  (*Id*. ¶ 37.)

Construing Take-Two's allegations as true and in the light most favorable to it, Take-Two sufficiently pleads that PlayerAuctions instigated copying, storage and distribution of "Modded Accounts," which infringe Take-Two's copyright through unauthorized copying of the source code.  Further, by claiming that PlayerAuctions advertises the "Modded Accounts," Take-Two plausibly alleges that PlayerAuctions incentivizes, markets, and assists in distributing the infringing content.  Such conduct is "sufficiently close and causal to the illegal copying."  *VHT*, 918 F.3d at 732.  Therefore, Take-Two's allegations satisfy the volitional conduct requirement.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Take-Two's direct copyright infringement cause of action.

## C.     Secondary Copyright Infringement (Counts 2, 3, 4)

Take-Two brings three secondary copyright infringement causes of action. (Compl. ¶¶ 53–69.)  In its second and third cause of action, Take-Two asserts contributory and vicarious copyright infringement, respectively.  (*Id*.)  Through these claims, Take-Two asserts that Defendants' users infringe Take-Two's copyrights by modifying GTA V elements, thereby exceeding the scope and conditions of the Terms of Service ("TOS") to which all players agree.  (*Id*.; *see also id*. ¶¶ 21–28, Ex. A ("TOS").)  In its fourth cause of action, Take-Two asserts inducement of copyright infringement, alleging that Defendants actively encourage and induce their users to modify GTA V accounts, thereby inducing users to exceed the scope and conditions of

the TOS. (*Id.* ¶¶ 70–76.) The Court takes its cue from the parties and analyzes the three secondary infringement claims collectively. (*See* MTD 14–18; Opp'n 16–21.)

Defendants argue that Take-Two's secondary copyright infringement causes of action fail as a matter of law because they are based on PlayerAuctions's users breaching TOS *covenants*, not conditions, and the breach of covenants does not result in actionable infringement. (MTD 14–18.) Take-Two agrees that the dispositive issue for the secondary infringement claims is whether users breached a TOS covenant or condition, but it argues that its allegations show the users breached *conditions*, not covenants. (Opp'n 16–18.)

To establish secondary infringement, a plaintiff must first demonstrate the defendant's direct infringement. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 937 (9th Cir. 2010). To establish direct infringement by a defendant that operates a website, a plaintiff must demonstrate "copyright ownership and violation of one of its exclusive rights by [the defendant's website] users." *Id.* A defendant will be liable for secondary infringement if it intentionally induces, encourages, or contributes to direct infringement by its users. *Id.* Those users may directly infringe a copyright when their computers copy the plaintiff's copyrighted software into their computer's local memory, unless the user is a "licensee whose use of the software is within the scope of the license." *Id.* at 938.

"A copyright owner who grants a nonexclusive, limited license" to use its software, "ordinarily waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract." *Id.* at 939. "However, if the licensee acts outside the scope of the license," the copyright owner "may sue for copyright infringement." *Id.* Contractual terms that limit a license's scope are "conditions" and all other license terms are "covenants." *Id.* Thus, breach of a *condition* is actionable under copyright law, but breach of a *covenant* is actionable only under contract law. *Id.* For instance, where a user manipulates a copyrighted game in a way that breaches a term *limiting the scope of the license*, the user breaches a *condition* of the license and

may be liable for copyright infringement. In contrast, where a user's manipulation breaches *any other term of the license*, the user breaches a *covenant* and may be liable for breach of contract. To determine whether the terms that Take-Two alleges Defendants' users violated are conditions or covenants, and thus whether actionable under copyright or contract law, the Court looks to the language of the TOS and the law governing it. *Id.* ("We distinguish between conditions and covenants according to state contract law, to the extent consistent with federal copyright law and policy.").

The TOS is construed under "the laws of the State of New York." (TOS § 17.1, ECF No. 1-1.) Generally, "New York respects a presumption that terms of a contract are covenants rather than conditions." *Sohm v. Scholastic Inc.*, 959 F.3d 39, 46 (2d Cir. 2020), *abrogated on other grounds by Warner Chappel Music, Inc. v. Nealy*, 601 U.S. 366, 373 (2024). To state a condition, the terms must be "expressed in unmistakable language," although "specific, talismanic words are not required." *Id.* Conditional language, such as "if," "on condition that," "provided that," "in the event that," and "subject to" can "make plain a condition precedent." *Id.* (cleaned up).

Here, Take-Two alleges that, in the TOS, it "conditions its limited license on users agreeing to not undertake any unauthorized modification or 'hacking' of GTA V's software, or assist others in doing so." (Compl. ¶ 25.) Take-Two further alleges that PlayerAuctions's users exceeded "the scope and conditions" of the TOS when they engaged in "unauthorized reproduction, distribution, adaptation, and/or display of GTA V"; "promoted versions of GTA V that modified creative and gameplay elements"; and "create[d] and market[ed] 'modded' accounts or 'cheats.'" (*Id.* ¶¶ 55, 63, 71.) In addition, Take-Two's TOS uses the quintessential conditional language "subject to" in setting out the scope of the license: "*Subject to* the terms of this Agreement, we grant you a limited, non-exclusive, non-transferable, non-sublicensable, revocable license to access and use the Services, including Virtual Items and your Account, for your *personal, non-commercial* enjoyment." (TOS § 2.2 (emphasis added); Opp'n 19.) These allegations and conditional language make it plausible that

the at-issue terms are conditions, the breach of which may be actionable as copyright infringement.

Still, Defendants argue that the presumption favoring covenants should apply such that the terms here are covenants, not conditions. (MTD 17.) Defendants ignore Take-Two's allegations of conditions precedent and the conditional language in the TOS setting out the scope of the license. Defendants instead point to select provisions that they contend show discretion and support that the terms are covenants: "[w]e may immediately terminate or suspend your right to access any aspect of the Services" and "[i]f we decide to terminate or suspend your right to access . . . we will try to inform you in advance." (TOS § 12.3; MTD 17.) Defendants do not cite any New York law to support that discretionary language signals a covenant, and, at this pleading stage, the identified language does not warrant dismissal as a matter of law. This is especially so in light of Take-Two's allegations that the terms are conditions and the TOS provisions setting out the scope of the conditional license discussed above. Construing Take-Two's well-pleaded allegations in the light most favorable to it, Take-Two sufficiently pleads that the breached terms are conditions, actionable under copyright.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Take-Two's secondary copyright infringement claims.

### D. Trademark Infringement Claims (Counts 5, 6)

Take-Two asserts two trademark causes of action under the Lanham Act—trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C § 1125(a). (Compl. ¶¶ 77–88.) Take-Two alleges that Defendants infringe Take-Two's trademarks by using the marks in Defendants' advertisements and website. (*Id.* ¶¶ 44, 77–88.) Defendants argue the Court should dismiss the trademark claims because Defendants' use of the marks qualifies as nominative fair use. (MTD 24–26; Reply 12).

"The standard for Lanham Act trademark infringement is the same as for Lanham Act false designation of origin." *Luxottica Grp. S.p.A. v. Thornton*, No. 2:19-cv-05772-

CAS (MRWx), 2022 WL 2167685, at *4 (C.D. Cal. May 2, 2022); *see Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (noting that claims of trademark infringement, false designation of origin, and unfair competition were all "subject to the same test"). To prevail, a plaintiff must prove: "(1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion." *Luxottica*, 2022 WL 2167685, at *4. However, when "the defendant uses a trademark to describe the *plaintiff's* product, rather than its own," the defendant may raise nominative fair use as a defense, because the use "does not imply sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (emphasis added). To establish nominative fair use defense, a defendant must show: (1) the product is "one not readily identifiable without use of the trademark"; (2) the defendant used only so much of the mark "as [wa]s reasonably necessary to identify the product"; and (3) the user does not do something to "suggest sponsorship or endorsement by the trademark holder." *Id*. Once "the defendant raises a nominative [fair] use defense," the third trademark element—likelihood of confusion —is replaced with the three-factor test for nominative fair use. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

"Whether a defendant has established the nominative fair use defense is a factual inquiry." *Hydrafacial LLC v. Med. Purchasing Res.*, No. 2:24-cv-04655-HDV (SKx), 2024 WL 5265441, at *3 (C.D. Cal. Oct. 1, 2024) (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 609 (9th Cir. 2005)). Therefore, "courts have declined to rule on the defense at the motion to dismiss stage." *Id.*; *see also Rolex Watch U.S.A., Inc. v. Agarwal*, No. 2:12-cv-06400-MMM (MRWx), 2012 WL 12886444, at *7 (C.D. Cal. Dec. 17, 2012) ("[C]ourts have stated that 'nominative fair use analysis typically involves questions of law and fact, and determination on a motion to dismiss is premature.'"). Only when "the pleadings fail[] to allege a mark use beyond nominative fair use" is it appropriate to consider a nominative fair use defense on a motion to dismiss. *Hydrafacial*, 2024 WL 5265441, at *4.

1    Here, Take-Two plainly alleges that Defendants' mark use goes beyond nominative fair use. It states that PlayerAuctions advertises its online marketplace by using Take-Two's mark in the website's headline and by, for instance, offering "Legit GTA Accounts." (Compl. ¶ 44.) Take-Two includes a search engine result linking PlayerAuctions's website to the headline "Legit GTA Accounts for Sale" with a caption: "Looking for a top-level GTA account? Check out the offerings made by sellers here." (*Id.*) Taking these allegations as true and construing reasonable inferences in Take-Two's favor, it is plausible that PlayerAuctions suggests GTA endorsement by using GTA marks.

Take-Two also provides a cropped image of PlayerAuctions' website to show that Defendants use GTA marks there. (*Id.*) Defendants submit the uncropped image and point to a disclaimer at the bottom denying any affiliation with Take-Two, arguing the disclaimer refutes any suggestion of endorsement. (MTD 26; Req. Incorp., Ex. 2.) Nonetheless, even if Defendants' mark use on the website "would seem to be fair use" in light of the disclaimer, such analysis remains premature on a motion to dismiss. *See Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, No. C 08-04397 WHA, 2008 WL 6742224, at *5 (N.D. Cal. Dec. 18, 2008) (noting that, even where the alleged uses "would seem to be fair use," the "analysis of nominative fair use is premature on a motion to dismiss, particularly given the factual nature of the inquiry.").

Accordingly, the Court **DENIES** Defendants' motion to dismiss Take-Two's trademark infringement claims.

E.    **Interference With Contractual Relations (Count 7)**

Take-Two brings a cause of action for interference with contractual relations, alleging that Defendants induce users to violate the TOS. (Compl. ¶¶ 89–97.) Defendants move to dismiss this claim on the grounds that Take-Two fails to allege an "independently wrongful act," which Defendants contend is necessary to state a claim for tortious interference with an at-will contract like the TOS. (MTD 27–28.) Take-Two does not dispute that its TOS is a contract terminable at will, but it contends

that an "independent wrongful act" is not a required element of this cause of action. (Opp'n 25–28.)

"[T]o state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020). An act is considered independently wrongful "if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1142. Thus, to state a cause of action for tortious interference with contractual relations, a plaintiff must allege: (1) existence of a valid contract between the parties; (2) the defendant's knowledge of the contract; (3) the defendant's intentional act inducing a breach or disruption of the contract; (4) actual breach or disruption; (5) resulting damages; and (6) an independently wrongful act. *See id.* at 1141, 1148. The parties dispute only the final element, the independently wrongful act. (*See* MTD 27–28; Opp'n 25–28.)

Take-Two does not allege an independent wrongful act. (*See generally* Compl.) Rather, it argues that it is not a required element in the circumstances of this case. Take-Two contends that an independently wrongful act is required only when a third party causes a *termination* of a contract, and not when, as here, the interference causes a *breach*. (Opp'n 26–27.) However, the cases Take-Two cites in support of this argument are not controlling and do not limit or undermine the rule set forth in *Ixchel*. (*See id.*) For instance, Take-Two cites a single California case, *Ravel v. Hubbard*, 112 Cal. App. 2d 255, 259 (1952), for the proposition that "[where] a contract is terminable at will, liability attaches for breaches occurring prior to the termination of the contract." (Opp'n 27.) However, that 1952 case concerns a breach of contract claim; it does not contemplate a claim for interference with at-will contractual relations. *See Ravel*, 112 Cal. App. 2d at 256 (noting defendants appeal from judgment on a breach of contract claim). Take-Two's remaining authority from district courts in Maryland and Utah is neither controlling nor persuasive.

Accordingly, Take-Two fails to state a cause of action for interference with contractual relations. Therefore, the Court **GRANTS** Defendants' Motion and **DISMISSES** Take-Two's cause of action for interference with contractual relations, with leave to amend the noted deficiency.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 20.) Specifically, the Court **GRANTS** Defendants' Motion and **DISMISSES** Take-Two's seventh cause of action for interference with contractual relations **WITH LEAVE TO AMEND**. The Court **DENIES** Defendants' Motion in all other respects.

If Take-Two chooses to file an amended complaint, it shall do so within **twenty-one (21) days** of the date of this Order, in which case Defendants shall answer or otherwise respond within **fourteen (14) days** of the filing. If Take-Two chooses not to amend, then as of the lapse of the deadline to amend, the Court's dismissal of the intentional interference claim shall be deemed a dismissal with prejudice.

**IT IS SO ORDERED.**

August 26, 2025

```
                              _____
                                    OTIS D. WRIGHT, II
                              UNITED STATES DISTRICT JUDGE
```