**DYKEMA GOSSETT LLP**
Brian H. Newman (SBN 205373)
bnewman@dykema.com
444 S. Flower Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

**DYKEMA GOSSETT PLLC**
Michael J. Word (*pro hac vice*)
MWord@dykema.com
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155

J. Daniel Harkins (*pro hac vice*)
dharkins@dykema.com
Ryan D. Borelo (*pro hac vice*)
rborelo@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, TX 78205
Telephone: (210) 554-5500
Facsimile: (866) 219-7593

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> PLAYERAUCTIONS, INC., a company organized under the laws of Delaware; IMI EXCHANGE LLC, a company organized under the laws of Delaware; PAIAO NETWORK TECHNOLOGY (SHANGHAI) CO., LTD. (拍奥网络科技（上海）有限公司), a/k/a PLAYERAUCTIONS (SH) CO. LTD., a company organized under the laws of China; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:25-cv-01880 ODW (JDE) <br><br> Judge: Hon. Otis D. Wright, II <br><br> **COUNTER-PLAINTIFF PLAYERAUCTIONS, INC.'S OPPOSITION TO COUNTER-DEFENDANT TAKE-TWO INTERACTIVE SOFTWARE, INC.'S MOTION TO DISMISS COUNTER-PLAINTIFF'S COUNTERCLAIMS** <br><br> Date: November 24, 2025 <br> Time: 1:30 pm <br> Courtroom: 10-C |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................... 5

II. LEGAL STANDARD ............................................................................................... 5

III. ARGUMENT ............................................................................................................ 6

    A. PlayerAuctions Adequately Alleged That Take-Two Knowingly Misrepresented That Material Was Infringing in Its Notice .................. 6

    B. Take-Two's Failure to Consider Fair Use Before Sending the Take-Two DMCA Takedown Notice Provides Another Basis to Deny the Motion. ........................................................................................ 10

    C. PlayerAuctions' Allegations of Willful Blindness Provide Another Basis to Deny the Motion. ...................................................... 12

    D. The Court's Ruling on the Prior Motion to Dismiss Does Not Preclude PlayerAuctions' § 512(f) Counterclaim ................................. 13

IV. CONCLUSION ....................................................................................................... 16

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... 5, 6, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 6, 13

*Concha v. London*,
  62 F.3d 1493 (9th Cir. 1995) ........................................................................... 6, 11

*Curtis v. Shinsachi Pharm., Inc.*,
  45 F. Supp. 3d 1190 (C.D. Cal. 2014) ................................................................... 6

*Davidson & Associates v. Jung*,
  422 F.3d 630 (8th Cir. 2005) ............................................................................... 11

*Digital Marketing Advisors v. McCandless Group, LLC*,
  No. 2:21-CV-06888-AB-GJS, 2022 U.S. Dist. LEXIS 235386 (C.D. Cal. Mar. 28, 2022) ....................................................................................................................... 9

*ENTTech Media Grp. LLC v. Okularity, Inc.*,
  Case No. 2:20-cv-06298-JWH-Ex, 2021 U.S. Dist. LEXIS 45118 (C.D. Cal. Mar. 10, 2021) ................................................................................................................ 10, 11

*ISE Entm't Corp. v. Longarzo*,
  No. CV 17-9132-MWF(JCx), 2018 U.S. Dist. LEXIS 40755 (C.D. Cal. Feb. 2, 2018) .......... 6

*Lenz v. Universal Music Corp.*,
  815 F.3d 1145 (9th Cir. 2016) ........................................................ 10, 11, 12, 13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ............................................................................. 16

*MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*,
  730 F. Supp. 3d 740 (N.D. Ill. 2024) ..................................................................... 8

*Moonbug Entertainment Ltd. v. Babybus (Fujian) Network Technologies Co.*,
  2022 U.S. Dist. LEXIS 33613 (N.D. Cal. Feb. 25, 2022) ..................................... 10

*OSU Student Alliance v. Ray*,
  699 F.3d 1053 (9th Cir. 2012) ............................................................................... 6

*Ouellette v. Viacom International, Inc.*,
  CV 10-133-M-DWM-JCL, 2012 U.S. Dist. LEXIS 68109 (D. Mont. Apr. 25, 2012) ............. 9

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

*Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) .............................................................................. 6, 11

*Rossi v. Mot Picture Ass'n of Am. Inc.*,
    391 F.3d 1000 (9th Cir. 2004) .................................................................................. 9

*Shande v. Zoox, Inc.*,
    No. 22-cv-05821-BLF, 2024 U.S. Dist. LEXIS 91091 (N.D. Cal. May 21, 2024) ................ 13

*Stebbins v. Rebolo*,
    No. 22-cv-00546-JSW, 2024 U.S. Dist. LEXIS 219764 (N.D. Cal. Dec. 4, 2024) .................. 6

*Unicorn Global, Inc., v. Golabs, Inc.*,
    447 F. Supp. 3d 535 (N.D. Tex. 2020) ..................................................................... 14

*Unicorn Global, Inc., v. Golabs, Inc.*,
    No. 19-CV-0754, 2019 U.S. Dist. LEXIS 199571 (N.D. Tex. Nov. 18, 2019) ................. 14

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ...................................................................................... 6

*Yuga Labs, Inc. v. Ripps*,
    144 F.4th 1137 (9th Cir. 2025) ............................................................................ 9, 10

**RULES**

Fed. R. Civ. P. 8 ................................................................................................................. 5

**STATUTES**

17 U.S.C. § 512 ..................................................................................................... 6, 12, 13

## I. INTRODUCTION

The Motion to Dismiss (the "Motion") filed by Take-Two Interactive Inc. ("Take-Two") should be denied because PlayerAuctions, Inc. ("PlayerAuctions") has adequately pled that Take-Two (1) knowingly and materially misrepresented that all of PlayerAuctions' listings constituted infringing material, (2) failed to consider fair use before issuing its DMCA takedown notice, and (3) acted with willful blindness in sending its defective notice. These specific, well-pleaded allegations satisfy § 512(f) of the Digital Millennium Copyright Act ("DMCA") and establish a claim for DMCA misrepresentation that easily survives dismissal, regardless of the Court's prior ruling on Take-Two's copyright claims.

Confronted with the clear misrepresentations from its letter, Take-Two attempts the equivalent of spinning wheat into gold: Take-Two tries to turn the mere fact that it survived a motion to dismiss into a "get out of jail free" card that absolves it of any wrongdoing it committed in connection with the letter it sent almost a year before bringing this suit. Incredibly, Take-Two claims that the survival of its claims is "dispositive" despite its inability to find *a single case* to support its sweeping *ex post facto* argument. In addition to lacking legal support, Take-Two's argument relies on mischaracterizations of its own notice letter, and on attempts to whitewash its prior false statements with more recent positions and arguments advanced in this litigation. Ultimately, Take-Two's proposed alternative readings of the statements in its letter are insufficient to rebut the well-pleaded allegations in PlayerAuctions' counterclaim (the "Counterclaim"), and Take-Two's motion to dismiss must be denied.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint needs only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8, and does not require "detailed factual allegations," but only "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). When evaluating such a motion, a court must accept as true the complaint's well-pleaded factual allegations and construe them in the light most favorable to the non-moving party. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937-38 (9th Cir. 2008). If the claim is plausible, meaning more than a sheer possibility, it should be allowed to proceed. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (quoting *Iqbal*, 129 S. Ct. at 1949).

The *Iqbal/Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief. *See Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). *See also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant.").

## III. ARGUMENT

### A. PlayerAuctions Adequately Alleged That Take-Two Knowingly Misrepresented That Material Was Infringing in Its Notice

Under 17 U.S.C. § 512(f), a defendant is liable if they knowingly and materially misrepresent information in a DMCA takedown notice. To adequately plead a misrepresentation claim under 17 U.S.C. § 512(f), a claimant need only allege that the party sending the DMCA takedown notice knew it contained false infringement allegations. *Curtis v. Shinsachi Pharm., Inc.*, 45 F. Supp. 3d 1190, 1199 (C.D. Cal. 2014). *See also ISE Entm't Corp. v. Longarzo*, No. CV 17-9132-MWF(JCx), 2018 U.S. Dist. LEXIS 40755, *18-20 (C.D. Cal. Feb. 2, 2018) (motion to dismiss DMCA § 512(f) claim denied where complaint had sufficient allegations of defendants' actual knowledge of misrepresentation); *Stebbins v. Rebolo*, No. 22-cv-00546-JSW, 2024 U.S. Dist. LEXIS 219764, *17-18 (N.D. Cal. Dec. 4, 2024) (denying motion to dismiss DMCA misrepresentation claim where plaintiff alleged defendant knowingly submitted false takedown notices for ten of plaintiff's videos.).

PlayerAuctions' Counterclaim contains specific factual allegations

demonstrating that Take-Two knowingly misrepresented that the listings on PlayerAuctions' website constituted infringing material. The Counterclaim identifies several specific misrepresentations in Take-Two's April 26, 2024 DMCA takedown notice (the "Take-Two DMCA Takedown Notice"), including the following:

- Take-Two falsely represented that "each of the Infringing Listings seeks to promote itself through the unauthorized use of Take-Two IP, including in promotional materials, in-game screenshots, and/or gameplay video," when in fact "hundreds of the allegedly infringing listings identified in the Take-Two DMCA Takedown Notice did not include any screenshots, gameplay video, or other promotional materials containing Take-Two's copyrighted IP because such listings did not include any images or video at all." (Counter-Plaintiff PlayerAuctions, Inc.'s Counterclaims, Dkt. No. 33 ("Countercl.") ¶ 27.)

- Take-Two falsely represented that each of the allegedly infringing listings involved "unauthorized modification of [Take-Two's] copyrighted source code," when in fact "the goods and services of the allegedly infringing listings identified in the Take-Two DMCA Takedown Notice do not require unauthorized modification of Take-Two's copyrighted source code." (Countercl. ¶¶ 32-33.)

- In the Take-Two DMCA Takedown Notice, Take-Two falsely identified user account listings as "Infringing Listings" even though such accounts had not been manipulated using software that hacks Take-Two's copyrighted source code, including listings for "unused" accounts with "0% progress" and accounts where users had simply "grinded" to achieve their status. (Countercl. ¶ 26.)

These allegations go beyond mere conclusory statements and provide specific examples of Take-Two's knowing misrepresentations. Take-Two's own statements in the DMCA Takedown Notice acknowledge that certain activities like "glitches" and "exploits" do not involve unauthorized modification of source code, yet Take-

7

Two nevertheless represented that all listings involved such modification. (*See* Countercl. ¶¶ 29-31, Ex. A Page ID # 472-73 (acknowledging that account "boosting" services may be accomplished through "glitches" or "exploits," while also asserting that "[i]n addition to infringing the Take-Two IP through the unauthorized modification of our copyrighted source code, *each of the Infringing Listings* seeks to promote itself through the unauthorized use of Take-Two IP, including in promotional materials, in-game screenshots, and/or gameplay video.") (emphasis added).) This internal contradiction within Take-Two's own notice supports the inference that Take-Two knew its representations were false.

   Take-Two argues that it is improper to allege "knowing falsity and subjective bad faith because *some* of the URLs listed might not fall within categories of infringement specifically enumerated in the April letter," and that to hold otherwise requires a "deliberate misreading" of its letter.  To the contrary, PlayerAuctions' allegations accurately reflect the representations that Take-Two itself made in its letter and are consistent with the strict approach taken by other courts in considering § 512(f) counterclaims.  For example, in *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, the district court denied a motion to dismiss a 512(f) counterclaim where the DMCA takedown letter represented that the alleged infringer had copied "all" of the copyright holder's materials, which was false.  730 F. Supp. 3d 740, 751 (N.D. Ill. 2024) ("The word 'all' means 100 percent, or verbatim.").  Here, Take-Two stated that *each* of the alleged "Infringing Listings" infringed through unauthorized modification of copyrighted source code, and through the unauthorized use of Take-Two IP.  (Countercl. ¶¶ 27-31.)  Although Take-Two may now regret making such categorically false statements in connection with its DMCA demand, it does not change the fact that these statements were false when Take-Two made them, and that Take-Two *knew* they were false.  (*Id.* at ¶¶ 28, 30-32.)

   Moreover, PlayerAuctions has alleged that Take-Two knew about the

8

COUNTER-PLAINTIFF PLAYERAUCTIONS, INC.'S OPPOSITION TO COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS

PlayerAuctions marketplace for GTA Online for more than 10 years before sending the Take-Two DMCA Takedown Notice, showing that Take-Two was fully aware of the nature of the listings on the PlayerAuctions website. (Countercl. ¶¶ 5-6.) This further supports that Take-Two knew its representations about the listings were false.

The cases that Take-Two cites in support of its motion are distinguishable because they involve different postures and standards, and materially different facts. This is underscored by Take-Two's reliance on the Ninth Circuit's holding in *Rossi*, which is riddled with errors. In *Rossi*, the Ninth Circuit addressed a motion for summary judgment, not a motion to dismiss at the pleading stage. *Rossi v. Mot Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1002 (9th Cir. 2004). *Rossi* also did not address "collateral facts alleged in the course of an infringement notification," despite Take-Two citing it for this proposition. (*See* Notice of Motion and Motion of Take-Two Interactive Software, Inc. to Dismiss Counterclaims of Defendant PlayerAuctions, Inc., Dkt No. 37 ("Motion") at 12.) Moreover, the language that Take-Two "quotes" from *Rossi* does not appear in that case at all. (*Compare* Motion at 12 (quoting language "merely … consistent with" and "high standard for a § 512(f) claim"), *with Rossi*, 391 F.3d at 1005 (lacking any such language).)

In *Ouellette v. Viacom International, Inc.*—an unpublished case from another district that Take-Two cites six times in its Motion—a *pro se* party asserting a § 512(f) misrepresentation claim pleaded no facts showing that the sender of a DMCA takedown notice acted without a good-faith belief, even after the claimant amended his complaint twice and the lawsuit had been pending for nearly a year. CV 10-133-M-DWM-JCL, 2012 U.S. Dist. LEXIS 68109, at *10 (D. Mont. Apr. 25, 2012). Likewise, in *Digital Marketing Advisors v. McCandless Group, LLC*, the claimant alleged that the defendants mistakenly asserted rights in a takedown notice and further asserted that they had acted "fraudulently," which triggered Rule 9(b)'s heightened pleading standard even though fraud is not a required element for a §

512(f) claim. No. 2:21-CV-06888-AB-GJS, 2022 U.S. Dist. LEXIS 235386, at *8-9 (C.D. Cal. Mar. 28, 2022). In *Yuga Labs, Inc. v. Ripps*, the takedown sender mistakenly invoked the DMCA to enforce trademark rights, and there was no evidence of "knowledge of misrepresentation" where the notices exclusively referenced trademark infringement. 144 F.4th 1137, 1177 (9th Cir. 2025). And in *Moonbug Entertainment Ltd. v. Babybus (Fujian) Network Technologies Co.*, the § 512(f) claimant failed to allege facts for either prong of its DMCA misrepresentation claim. 2022 U.S. Dist. LEXIS 33613, *30-31 (N.D. Cal. Feb. 25, 2022).

In contrast to the cases cited by Take-Two, PlayerAuctions has met its burden at the pleading stage by alleging specific, detailed facts showing that Take-Two knowingly made false infringement allegations in the Take-Two DMCA Takedown Notice. These allegations more than satisfy the pleading standard under § 512(f) and readily survive Take-Two's attacks with irrelevant case law.

### B. Take-Two's Failure to Consider Fair Use Before Sending the Take-Two DMCA Takedown Notice Provides Another Basis to Deny the Motion.

PlayerAuctions has also alleged that Take-Two failed to consider fair use before sending the Take-Two DMCA Takedown Notice. A copyright owner who fails to consider fair use before sending a DMCA takedown notice is liable under § 512(f). *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016) ("A copyright holder who pays lip service to the consideration of fair use by claiming it formed a good faith belief when there is evidence to the contrary is still subject to § 512(f) liability."); *ENTTech Media Grp. LLC v. Okularity, Inc.*, Case No. 2:20-cv-06298-JWH-Ex, 2021 U.S. Dist. LEXIS 45118, at *13 (C.D. Cal. Mar. 10, 2021) (§ 512(f) claim is sufficiently pled by alleging a defendant failed to consider fair use "sufficiently or at all" because the adequacy of an infringement analysis is a factual issue).

PlayerAuctions has alleged that Take-Two failed to consider fair use for the

allegedly infringing listings when sending the DMCA takedown notice. (Countercl. ¶¶ 35-38, 55, 57.) Specifically, PlayerAuctions has alleged that to the extent any listings included screenshots or gameplay video, such material was "insubstantial and otherwise qualifies as fair use of any copyrighted material." (Countercl. ¶ 36.) PlayerAuctions has also alleged that Take-Two has previously argued that "material from its video games that amounts to insubstantial portions should qualify as fair use," and had Take-Two conducted a proper fair use analysis, "it would have recognized that any screenshots or gameplay included in such listings were fair use." (Countercl. ¶¶ 37-38.)

Take-Two's Motion seeks to discredit the Counterclaim's fair use allegations made on information and belief, but the Ninth Circuit permits such pleading, particularly when the relevant facts are more readily known to the defendant. *See Park*, 851 F.3d 910; *Concha*, 62 F.3d at 1503 ("[W]e relax pleading requirements where the relevant facts are known only to the defendant.").  Notably, the Take-Two DMCA Takedown Notice does not mention fair use, nor does Take-Two contend that it conducted any fair use analysis at all.  Indeed, this Court has held that the sufficiency of a copyright infringement analysis in the context of a DMCA misrepresentation claim is a factual issue that is not ripe for resolution on a motion to dismiss. *Okularity, Inc.*, 2021 U.S. Dist. LEXIS 45118, at *13.

The Motion also tries to justify Take-Two's failure to consider fair use by claiming that the "GTA Marketplace" on the PlayerAuctions website induces users of Take-Two's copyrighted works to void their licenses. (Motion at 16.) But such contentions are irrelevant because fair use considerations are required regardless of whether or not a use is licensed, as fair use itself is a use "authorized by the law." *Lenz*, 815 F.3d at 1153.  Furthermore, such contentions are irrelevant under the DMCA absent infringement of Take-Two's copyrights by PlayerAuctions itself.  In this regard, Take-Two's citation to *Davidson & Associates v. Jung* is inapposite because that case involved summary judgment based on the defendants' agreement

to terms of use and an end-user license agreement, which does not apply to PlayerAuctions here. 422 F.3d 630, 639 (8th Cir. 2005).

The Counterclaim's allegations support the inference that Take-Two knew the use of its copyrighted material in the accused listings on the PlayerAuctions website was fair use, yet still proceeded with the DMCA Takedown Notice. This further supports PlayerAuctions' claim under § 512(f).

### C. PlayerAuctions' Allegations of Willful Blindness Provide Another Basis to Deny the Motion.

The Motion should also be denied because the Counterclaim sufficiently alleges that Take-Two was willfully blind to the fact that the listings at issue did not contain infringing material. Willful blindness can establish that a copyright holder "knowingly materially misrepresent[ed]" its "good faith belief" that the identified material was infringing or not fair use. *See* 17 U.S.C. § 512(c)(3)(A)(v), (f). *See also Lenz*, 815 F.3d at 1155.

The Counterclaim alleges that Take-Two knew or was willfully blind to the fact that listings without images or video "did not and could not include any screenshots, gameplay video, or other promotional materials containing Take-Two's copyrighted IP." (Countercl. ¶ 28.) This allegation directly addresses the knowledge requirement of § 512(f), as it asserts that Take-Two knowingly misrepresented that the listings contained infringing material when they physically could not have contained such material.  Other allegations in the Counterclaim further establish Take-Two's knowledge or willful blindness, including allegations regarding listings that, on their face, evidenced a clear lack of any manipulation or hacking of Take-Two source code.  (Countercl. ¶ 26.)

According to the Counterclaim, Take-Two also "did not consider the existence of fair use for the allegedly infringing listings when sending the Take-Two DMCA Takedown Notice, or, at the very least, was willfully blind to the fair use of any content in the allegedly infringing listings." (Countercl. ¶ 55.)  The Ninth

12
COUNTER-PLAINTIFF PLAYERAUCTIONS, INC.'S OPPOSITION TO COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS

Circuit has held that willful blindness may also be used to determine whether a copyright holder "knowingly materially misrepresent[ed]" that it held a "good faith belief" the offending activity was not a fair use under § 512(f). *Lenz*, 815 F.3d at 1155.

These allegations of willful blindness are sufficient to establish the requisite knowledge at the pleading stage. PlayerAuctions has properly stated a § 512(f) claim, and the Motion should be denied.

### D. The Court's Ruling on the Prior Motion to Dismiss Does Not Preclude PlayerAuctions' § 512(f) Counterclaim.

This Court's ruling on Defendants' prior motion to dismiss does not preclude liability under 17 U.S.C. § 512(f), because § 512(f) examines the sender's state of mind at the time of the DMCA notice and is independent of the ultimate merits of the infringement claim. *See, e.g., Shande v. Zoox, Inc.*, No. 22-cv-05821-BLF, 2024 U.S. Dist. LEXIS 91091, *10-11 (N.D. Cal. May 21, 2024) (motion to dismiss § 512(f) claim denied where claimant alleged takedown notice sender knowingly asserted baseless rights at the time the notice was sent). Take-Two's assertion that denial of Defendants' motion to dismiss its copyright claim precludes liability under 17 U.S.C. § 512(f) is legally incorrect and fails because it conflates two distinct inquiries: (1) whether Take-Two's Complaint plausibly alleges infringement under Rule 12(b)(6), and (2) whether, over a year earlier, the Take-Two DMCA Takedown Notice was issued in subjective good faith as required by 17 U.S.C. §§ 512(c)(3)(A)(v) and 512(f). These inquiries are both legally and temporally distinct. The Court's prior ruling that Plaintiff plausibly stated a claim for infringement at the pleading stage merely means that the Complaint was not subject to dismissal under *Twombly* and *Iqbal*—it does not establish, or even imply, that Take-Two possessed a good-faith belief in infringement when it sent the pre-suit DMCA Takedown Notice a year earlier, or that Take-Two properly considered fair use before sending its DMCA Takedown Notice.

First, Take-Two does not cite a single authority for the proposition that the mere denial of a Rule 12(b)(6) motion transforms a pre-litigation DMCA notice into one made in good faith. Take-Two's Motion cites no case holding that surviving a pleading challenge on a later-filed infringement claim is "dispositive" of the distinct question of whether the sender knowingly or recklessly misrepresented infringement when issuing a takedown notice under § 512(f). Indeed, Take-Two's position defies common sense—if the mere fact that a party survived a motion to dismiss were dispositive on issues of "subjective intent," then by simply allowing one party's claim to move forward at the pleading stage a court would need to render judgment on the other party's claim. In other words, it would be impossible for competing claims to survive the pleading stage if one of the party's claims involved the subjective intent of the other party. A brief search shows that this is not the case, and that a court can uphold one party's claim of alleged infringement while simultaneously crediting a counter-party's allegations that such claim is baseless or was brought with subjective bad faith. *See*, *e.g.*, *cf. Unicorn Global, Inc., v. Golabs, Inc.*, No. 19-CV-0754, 2019 U.S. Dist. LEXIS 199571, at *9 (N.D. Tex. Nov. 18, 2019) (denying defendant's motion and finding plaintiff to have "colorable infringement claims"); *and Unicorn Global, Inc., v. Golabs, Inc.*, 447 F. Supp. 3d 535, 544 (N.D. Tex. 2020) (denying plaintiff's motion to dismiss defendant's unfair competition counterclaims because defendant had plausibly alleged that plaintiff's patent infringement claims were "objectively baseless" and asserted in bad faith).

Second, the copyright infringement allegations that survived Defendants' motion to dismiss are not "the very same claims that were asserted in the April letter," as Take-Two asserts. (Motion at 13.) Take-Two's direct and secondary infringement claims have undergone remarkable revisions since it sent its letter.

With respect to direct infringement, the Court found that Take-Two plausibly alleged infringement based on any and all GTA V content that might be found on the website. Order Granting in Part and Denying in Part Defendants' Motion to

Dismiss, Dkt. No. 29 at 7-8.  This is a far cry from Take-Two's claim in its takedown letter that "*each* of the Infringing Listings" includes GTA V content—a claim that Take-Two knew was false because a large number of the accused listings contained absolutely no images, video, or any other media content. (Countercl. ¶¶ 27-28.)

The evolution of Take-Two's secondary infringement claims is even more stark.  As Take-Two admits, its current secondary copyright infringement claims survived only because it alleged that certain terms in its Terms of Service ("TOS") were "conditions."  (Motion at 6.)  But in its takedown letter, Take-Two did not rely on alleged violations of its TOS to support its DMCA takedown demand.  The "DMCA Takedown Notice" section in its letter is based entirely on the allegations—shown above to be false—that the URL listings for "'Modded' Account Sales," "'Money Drop' Services," and "Account 'Boosting' Services" infringe because they each involve "unauthorized modification of source code" and "unauthorized use of Take-Two IP," not because they involve supposed violations of Take-Two's TOS. (Countercl., Ex. A, Page ID # 472-73.)  In fact, the DMCA Takedown Notice section of Take-Two's letter does not refer to its TOS *at all*. *Id.*  The only references to Take-Two's TOS in its demand letter are found in Take-Two's section on "Intentional Interference with Contract," which Take-Two characterized as being "[i]ndependent" of its basis for its DMCA demand. (Countercl., Ex. A, Page ID # 473.)  Nevertheless, Take-Two now claims in its motion that isolated statements from its letter regarding its TOS—directed to the "independent" and separate claim of intentional interference with contract, no less—are the *real* basis for its DMCA takedown demand, and suggests that the Court should overlook its patently false statements as just a few bad "examples."  (Motion at 14-15.)  Take-Two's attempt to effectively "rewrite" the claims in its DMCA Takedown Notice in light of the Court's recent ruling only further supports PlayerAuctions' Counterclaim because it shows that Take-Two knows that its original claims of infringement in its DMCA

Takedown Notice are and were knowingly false.

Third, the allegations in Take-Two's Amended Complaint are distinct from any claims in its DMCA Takedown Notice because they are based on a different version of its TOS than the one in effect when it sent the Notice. Take-Two sent its DMCA takedown letter on April 26, 2024. (Countercl. ¶ 19.) The TOS that Take-Two relies upon in its Amended Complaint was updated nearly a year later, on February 28, 2025—less than a week before it filed this action. Dkt. No. 30-1, ID # 393. The fact that Take-Two revised its TOS after sending its DMCA takedown letter further establishes the plausibility of PlayerAuctions' Counterclaim, because it shows that Take-Two believed its existing TOS to be deficient and that it believed it needed to amend its TOS before filing the present lawsuit.

Finally, the Court's ruling on Defendants' prior motion to dismiss was based solely on the allegations in Take-Two's Complaint, not on the representations made in the Take-Two DMCA Takedown Notice, which is not even referenced in Take-Two's Complaint. The two are separate and distinct. The Take-Two DMCA Takedown Notice contained representations about the nature of the listings on PlayerAuctions' website, and PlayerAuctions has properly alleged that specific representations in the Notice were knowingly false.

## IV. CONCLUSION

PlayerAuctions has alleged specific, well-pleaded facts showing that Take-Two knowingly misrepresented its takedown claims, failed to consider fair use, and acted with willful blindness. Taken together, these allegations satisfy the pleading requirements of § 512(f) and establish that the Counterclaim easily survives dismissal, regardless of the Court's prior rulings on Take-Two's copyright claims. Should the Court disagree, PlayerAuctions respectfully asks that dismissal be without prejudice and with leave to amend. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008).

Dated: November 3, 2025　　　　　DYKEMA GOSSETT LLP

By: /s/ Brian H. Newman
Brian H. Newman
Attorneys for Defendants
PlayerAuctions, Inc. and IMI Exchange LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for **DEFENDANTS PLAYERAUCTIONS, INC. and IMI EXCHANGE LLC**, certifies that this brief contains 3818 words, which:

    X    complies with the word limit of L.R. 11-6.1.

Dated:　　　November 3, 2025　　　　　*/s/ Brian H. Newman*
Brian H. Newman
Attorney for Defendants
PlayerAuctions, Inc. and IMI Exchange LLC