O

# United States District Court
# Central District of California

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

Plaintiff,

v.

PLAYERAUCTIONS, INC. et al.,

Defendants.

Case № 2:25-cv-01880-ODW (JDEx)

**ORDER GRANTING MOTION TO DEEM DEFENDANT SERVED [48]**

## I.     INTRODUCTION

Plaintiff Take-Two Interactive Software, Inc. brings this copyright and trademark infringement action against Defendants Paiao Network Technology (Shanghai) Co. Ltd. ("PAS"), PlayerAuctions, Inc., and IMI Exchange LLC.  (First Am. Compl. ("FAC"), Dkt. No. 30.)  Take-Two now moves for an order deeming PAS served based on its prior service attempts or, alternatively, authorizing service by email pursuant to Federal Rule of Civil Procedure ("Rule") 4(f).  (Mot. Deem Def. Served ("Motion" or "Mot."), Dkt. No. 48.)  For the following reasons, the Court

**GRANTS** the Motion.[1]

## II.    BACKGROUND

Take-Two publishes and owns the copyrights to a video game series.  (FAC ¶ 1.)  Defendants jointly manage a website selling allegedly infringing goods and services associated with Take-Two's games.  (*Id.* ¶¶ 2–3.)  Take-Two operates from the United States.  (*Id.* ¶ 7.)  PlayerAuctions and IMI Exchange also operate from the United States (collectively, the "U.S.-based Defendants"), while PAS operates from China.  (*Id.* ¶¶ 8–10.)  Although they operate from different locations, Take-Two alleges that PlayerAuctions, IMI Exchange, and PAS share a unity of interest and ownership such that no meaningful separateness exists among them.  (*Id.* ¶ 12.)

On March 4, 2025, Take-Two filed this infringement action against Defendants.  (Compl., Dkt. No. 1.)  On March 11, 2025, Take-Two served the summons and complaint on U.S.-based Defendants' counsel (the "U.S. Counsel").  (Proofs Serv., Dkt. Nos. 9–10.)  U.S. Counsel accepted service on behalf of the U.S.-based Defendants.  (*Id.*)  However, U.S. Counsel declined to accept service on behalf of PAS, stating they lacked the authority.  (Decl. James D. Berkley ISO Mot. ("Berkley Decl.") ¶ 3, Dkt. No. 48-1.)  On or about March 13, 2025, Take-Two mailed the summons and complaint by FedEx to PAS's registered address in China, where a recipient signed for delivery.  (*Id.* ¶ 2.)  Take-Two subsequently learned that PAS would not waive or consent to service.  (*Id.* ¶ 4.)  Consequently, Take-Two engaged a third-party vendor to effect service on PAS in China, pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention").  (*Id.*)

Pursuant to the Hague Convention, on or about June 10, 2025, Take-Two transmitted the original and translated copies of the summons and complaint to the Central Authority of the People's Republic of China ("Chinese Central Authority" or

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

"CCA") for service on PAS in China. (*Id.*) Take-Two requested that the Chinese Central Authority serve PAS at two locations: (1) PAS's registered address (previously used for the FedEx delivery), and (2) PAS's mailing-business address. (*Id.*) As to the first address, on or about September 11, 2025, the Chinese Central Authority returned a certificate stating that it found "no such company." (*Id.* ¶ 5.) As to the second address, on or about October 29, 2025, the Chinese Central Authority issued a service receipt indicating that an individual there rejected service of the documents. (*Id.* ¶ 6.) The individual "refused to accept" service because the company's "head office had already responded to the lawsuit in the United States" so the "Shanghai branch would no longer respond." (Berkley Decl. Ex. 4 ("CCA Receipt of Service"), Dkt. No. 48-1.)

Later, Take-Two identified a publicly listed e-mail address for PAS and sent the initiating documents to it, along with subsequent communications regarding this action. (Berkley Decl. ¶¶ 7, 11.) Take-Two did not receive any response or e-mail bounce-back. (*Id.* ¶¶ 11–12.)

Take-Two now moves for an order deeming PAS served in light of Take-Two's prior service attempts. (Mot. 7–8.) In the alternative, Take-Two seeks leave to serve PAS by emailing the PAS e-mail address and U.S. Counsel. (*Id.*) U.S.-based Defendants oppose. (Opp'n, Dkt. No. 50.)

### III.   LEGAL STANDARD

Rule 4(h)(2) authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for serving individuals in foreign countries. Under Rule 4(f), service on foreign individuals may be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1).

Alternatively, Rule 4(f)(3) permits service on individuals in a foreign country "by other means not prohibited by international agreement, as the court orders." Essentially, "service under Rule 4(f)(3) must be (1) directed by the court; and (2) not

prohibited by international agreement." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Rule 4(f)(3) does not function as a "last resort" or "extraordinary relief," but rather provides "merely one means among several" for serving an international defendant. *Id.* at 1015. Whether the circumstances of a case warrant alternative service under Rule 4(f)(3) rests within a district court's sound discretion. *Id.* at 1016. Any method of service authorized by the court must nevertheless comport with constitutional norms of due process. *Id.* Accordingly, the alternative service must be "reasonably calculated" under the circumstances to provide the defendant with notice of the action and the opportunity to raise objections. *Id.*

## IV. DISCUSSION

Take-Two requests that the Court deem PAS served based on its prior service attempts. (Mot. 7–8.) Take-Two attempted to serve PAS through three methods: (1) mailing the summons and complaint to PAS's registered address by FedEx; (2) transmitting the same documents through the Chinese Central Authority for service at two addresses; and (3) providing the summons and complaint to U.S. Counsel. (Berkley Decl. ¶¶ 2–4.) If the Court declines to deem PAS served by one of these attempts, Take-Two seeks leave to effect service by e-mail. (Mot. 7–8.)

China is a signatory to the Hague Convention, which governs service of process "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, Art. 1, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Art. 1"). When the Hague Convention applies, its signatories must comply with its procedures. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988).

The Hague Convention authorizes three principal methods of service, through: (1) the receiving country's central authority; (2) various alternative methods, including consular channels, judicial officers, or postal channels where "the receiving country has not objected to such methods"; and (3) "methods to which the receiving country has affirmatively agreed or authorized." *Cadence Design Sys., Inc. v. Fenda*

*USA Inc.*, 734 F. Supp. 3d 960, 964 (N.D. Cal. 2024).  As a signatory to the Hague Convention, China designates these methods as the "exclusive mechanism for service of documents abroad." *Id.* at 965.

## A.     First Attempted Service: FedEx Delivery

Take-Two first asks the Court to find that mailing the initiating documents by FedEx to PAS's registered address effected service.  (Mot. 7.)  Among the Hague Convention's service provisions, Article 10(a) governs service by postal channels. *Rockefeller Tech. Inv. (Asia) VII v. Changzhou SinoType Tech. Co.*, 9 Cal. 5th 125, 137 (2020) (discussing *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017)).  However, China "affirmatively object[s] to service 'by postal channels,'" which effectively precludes parties from relying on Article 10(a) to effect service by mail in China. *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 983 (N.D. Cal. 2020).

Here, the Hague Convention governs service of process because Take-Two transmitted judicial documents abroad to PAS in China.  As service must be effected in China, the country's affirmative objection under Article 10(a) controls and bars service by FedEx. *Water Splash*, 581 U.S. at 284 (clarifying that Article 10(a) permits service by mail only where the receiving state does not object).  As China expressly objects to mail service, it is irrelevant that California law may authorize service by mail or that an individual signed confirming receipt of the FedEx. *See Kott v. Superior Ct.*, 45 Cal. App. 4th 1126, 1136 (1996) (noting that failure to comply with the Hague Convention's procedures voids service even where the defendant had actual notice of the lawsuit).  For that reason, any attempt to serve PAS by mail, including FedEx, fails at the outset.

Accordingly, Take-Two's attempt to serve PAS by FedEx does not constitute valid service.

**B.      Second Attempted Service: Chinese Central Authority**

Take-Two next asks the Court to find that transmitting copies of the summons and complaint through the Chinese Central Authority to two of PAS's addresses effected service.  (Mot. 7–8.)  The Hague Convention requires that documents served abroad be "brought to the notice of the [defendant] in sufficient time." *Water Splash*, 581 U.S. at 276.  A party may serve a foreign defendant by submitting a service request to the receiving country's central authority.  *Facebook*, 480 F. Supp. 3d at 980.  The respective central authority must attempt service consistent with the receiving country's domestic law and provide a certificate confirming service or explaining why service could not be completed.  *Id.*  When seeking service through China's Central Authority, a party must translate the documents into Chinese before the Authority processes the request.  *Anthony Cal., Inc. v. Fire Power Co.*, No. 5:15-cv-00876-JGB (SPx), 2017 WL 11631343, at *2 (C.D. Cal. Aug. 24, 2017).

As above, the Hague Convention governs this attempt because Take-Two transmitted judicial documents to PAS in China.  This time, Take-Two properly attempted service through the Chinese Central Authority by transmitting to the Authority the original and translated copies of the documents.

First, the Chinese Central Authority attempted service at PAS's registered address, which is the same address to which Take-Two previously FedExed the summons and complaint.  However, the Chinese Central Authority found no company operating at that location.  Therefore, this attempt could not have been reasonably calculated to provide PAS with notice.  *See Kott*, 45 Cal. App. 4th at 1134 (reasoning that foreign defendants must receive service "that provides 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'" (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))).

Second, the Chinese Central Authority attempted service at PAS's mailing-business address where an unidentified individual affiliated with PAS refused

to accept service.  The individual stated they were refusing service because its "head office had already responded to the lawsuit in the United States."  (CCA Receipt of Service.)  Although this response supports a reasonable inference that the individual is affiliated with PAS, the individual's refusal to accept service precludes a finding that this attempt effected service under the Hague Convention.

Accordingly, Take-Two's attempts to serve PAS through the Chinese Central Authority do not constitute valid service.

**C.     Third Attempted Service: U.S. Counsel**

Take-Two finally requests that the Court find its service on U.S. Counsel to have effected service on PAS.  (Mot. 7–8.)  A "common form of service ordered under Rule 4(f)(3)" permits a party to effect service on a foreign defendant by serving its United States-based counsel domestically.  *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-cv-02460-LHK, 2011 WL 2607158, at \*13 (N.D. Cal. July 1, 2011).  In fact, due process does not even require the domestic counsel to "have represented [the foreign defendant] or been authorized to accept service on their behalf."  *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565–66 (C.D. Cal. 2012).  Rather, a party need only show that such counsel maintains contact with the foreign defendant sufficient to provide the defendant with reasonable notice.  *See id.* at 566 (finding service on company's U.S.-based counsel or registered agent reasonably provided notice to foreign defendants who were officers of the company).

Unlike the two attempts above, the Hague Convention does not govern service of process here because Take-Two transmitted judicial documents within the United States.  *Schlunk*, 486 U.S. at 707 (holding that the Hague Convention has "no further implications" when a party transmits judicial documents within the United States).  Specifically, on March 11, 2025, Take-Two provided the initiating documents to U.S. Counsel for PAS's corporate parent and affiliate, U.S.-based Defendants.  U.S Counsel declined to accept service on behalf of PAS, stating that he lacked authorization.  However, that refusal does not necessarily defeat service.  *SEC v.*

*China Sky One Med., Inc.*, No. 2:12-cv-07543-MWF (MANx), 2013 WL 12314508, at *5 (C.D. Cal. Aug. 20, 2013) (finding that U.S.-based counsel's lack of authorization to accept service and lack of representation in the matter "do not defeat service on such counsel").

As noted, service may be effective where there is evidence of contact between the U.S.-based Defendants and PAS such that notice to one would reasonably provide notice to the other. Here, when the Chinese Central Authority attempted to serve PAS at its business-mailing address, an individual at that address refused service because PAS's head office was addressing the suit. (CCA Receipt of Service.) Specifically, the individual declined service after PAS "contacted its headquarters" and learned that PAS's "head office had already responded to the lawsuit in the United States." (*Id.*) Thus, PAS maintains contact with its domestic parent and affiliate, U.S.-based Defendants in this case, which are represented by U.S. Counsel. This contact provided PAS with actual notice of the suit here, which is more than the minimal contact other courts have found sufficient to reasonably provide notice. *See China Sky*, 2013 WL 12314508, at *5 (finding that U.S.-based counsel's prior relationship with foreign defendant was sufficient to reasonably provide notice, despite counsel's lack of active involvement in the litigation). By serving the initiating case documents on U.S. Counsel, Take-Two employed a method "reasonably calculated" to give PAS notice of this action. *Mullane*, 339 U.S. at 314.

Accordingly, Take-Two's attempt to serve PAS through U.S. Counsel constitutes effective service. Thus, the Court deems PAS served as of March 11, 2025. *See Quality Inv. Fund, Malta 1, Ltd. v. Schuermann*, No. 2:16-cv-05720-TJH (JEMx), 2018 WL 6252426, at *1 (C.D. Cal. July 20, 2018) (retroactively approving service where the plaintiff's prior method of service was reasonably calculated to notify the defendant of the action).

Given this finding, the Court declines to address Take-Two's request to authorize service by alternative means as moot.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Take-Two's Motion and deems PAS served.   (Dkt. No. 48.)   PAS shall answer or otherwise respond to Take-Two's First Amended Complaint within **twenty-one (21) days** of the date of this Order.

**IT IS SO ORDERED.**

April 16, 2026

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**